UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHARLIE SAVAGE, et al.,

        Plaintiffs,

    v.

DEPARTMENT OF JUSTICE,

        Defendant.

Civil Action No. 22-2477 (JEB)

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

MATTHEW M. GRAVES
D.C. Bar No. 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

ALEXANDER SCHREIBER
Special Assistant U.S. Attorney
601 D Street, NW
Washington, D.C. 20530
Phone:  (202) 252-6754
Alexander.Schreiber@usdoj.gov

*Counsel for the United States of America*

## TABLE OF CONTENTS

BACKGROUND ................................................................................................................. 1

LEGAL STANDARD ........................................................................................................ 3

ARGUMENT ..................................................................................................................... 5

    I.    The Department Properly Withheld Information Under FOIA Exemption 5. .................... 5

        A.    All the Reports and FD-302s are Interagency Records. ............................................... 7

        B.    The Department properly withheld records under Deliberative Process Privilege. ..... 7

        C.    The Department Properly Withheld Records Under the Attorney Work-Product
        Privilege. ..................................................................................................................... 16

        D.    The Department Has Not Waived its Attorney Work-Product Privilege. .................. 26

    II.    The Department Found No Additional Portions of the Documents to Be Reasonably
    Segregable. ....................................................................................................................... 31

    CONCLUSION ................................................................................................................. 33

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*AARC v. CIA*,
   317 F. Supp. 3d 394, 399 (D.D.C. 2018) ................................................................. 3

*Aguiar v. DEA*,
   865 F.3d 730 (D.C. Cir. 2017) ................................................................................. 4

*Allen v. McCurry*,
   449 U.S. 90 (1980) ................................................................................................. 23

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................................. 3

*Bagwell v. Dep't of Justic,*
   e, 588 F. Supp. 3d 58 (D.D.C. 2022) .............................................................. 17, 19

*Black Hills Clean Water All. v. United States Forest Serv.*,
   No. CIV 20-5034, 2022 WL 2340440 (D.S.D. June 29, 2022) ............................ 24

*Brayton v. Off. of U.S. Trade,*
   *Rep.*, 641 F.3d 521 (D.C. Cir. 2011) ....................................................................... 3

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................................. 3

*Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*,
   600 F. Supp. 114 (D.D.C. 1984) ............................................................................ 8

*Citizens for Resp. & Ethics in Wash. v. Dep't of Lab.*,
   478 F. Supp. 2d 77 (D.D.C. 2007) ...................................................................... 4, 6

*Cleveland v. United States*,
   128 F. Supp. 3d 284 (D.D.C. 2015) ........................................................................ 9

*Coastal States Gas Corp. v. Dep't of Energy*,
   617 F.2d 854 (D.C. Cir. 1980) ......................................................................... 9, 17

*Competitive Enter. Inst. v. Dep't of Treasury*,
   308 F. Supp. 3d 109 (D.D.C. 2018) ........................................................................ 8

*Cottone v. Reno*,
   193 F.3d 550 (D.C. Cir. 1999) .............................................................................. 29

*Davis v. Dep't of Just.*,
   968 F.2d 1276 (D.C. Cir. 1992) ............................................................................ 29

*Dep't of Defense v. FLRA*,
   510 U.S. 487 (1994) ................................................................................................. 5

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
   532 U.S. 1 (2001) ............................................................................... 7, 11, 12, 16

*Ecological Rts. Found. v. EPA*,
   541 F. Supp. 3d 34 (D.D.C. 2021) ........................................................................ 13

*Eddington v. Dep't of,*
   *Def.*, 35 F.4th 833 (D.C. Cir. 2022) ....................................................................... 3

*Energy Policy Advocates. v. Dep't of State*,
   No. 1:19-CV-03307 (TNM), 2023 WL 4198200 (D.D.C. June 27, 2023) 4, 6, 12, 13, 15, 23, 24

*Fish & Wildlife Serv. v. Sierra Club, Inc.,*
   141 S. Ct. 777 (2021) ........................................................................................ 5, 9, 10
*Formaldehyde Inst. v. Dep't of Health and Human Services,*
   889 F.2d 1118 (D.C. Cir. 1989) ................................................................................. 6
*Gallant v. NLRB,*
   26 F.3d 168 (D.C. Cir. 1994) .................................................................................... 6
*Hall v. CIA,*
   268 F. Supp. 3d 148 (D.D.C. 2017) .......................................................................... 8
*Heggestad v. Dep't of Just.,*
   182 F. Supp. 2d 1 (D.D.C. 2000) ............................................................................ 27
*Hickman v. Taylor,*
   329 U.S. 495, (1947) .............................................................................................. 21
*In re Apollo Grp., Inc. Sec. Litig.,*
   251 F.R.D. 12 (D.D.C. 2008) ........................................................................... 17, 19
*Johnson v. Exec. Off. for U.S. Att'ys,*
   310 F.3d 771 (D.C. Cir. 2002) ................................................................................ 31
*Jud. Watch, Inc. v. Dep't of Homeland Sec.,*
   926 F. Supp. 2d 121 (D.D.C. 2013) ............................................................ 17, 19, 20
*Jud. Watch, Inc. v. Dep't of Just.,*
   20 F.4th 49 (D.C. Cir. 2021) ................................................................................... 11
*Jud. Watch, Inc. v. Dep't of Just.,*
   432 F.3d 366 (D.C. Cir. 2005) ...................................................................... 16, 31, 32
*Jud. Watch, Inc. v. Dep't of Just.,*
   800 F. Supp. 2d 202 (D.D.C. 2011) ........................................................................ 31
*Jud. Watch, Inc. v. Dep't of Just.,*
   806 F. App'x 5 (D.C. Cir. 2020) ....................................................................... 17, 21
*Jud. Watch, Inc. v. Dep't of,*
   Com., 375 F. Supp. 3d 93 (D.D.C. 2019) ............................................................... 12
*Kishore v. Dep't of Just.,*
   575 F. Supp. 2d 243 (D.D.C. 2008) ................................................................. 19, 20
*Krocka v. Exec. Off. for U.S. Att'y,*
   Civ. A. No. 17-2171 (CRC), 2019 WL 690341 (D.D.C. Feb. 19, 2019) .................. 21
*Larson v. Dep't of State,*
   565 F.3d 857 (D.C. Cir. 2009) .................................................................................. 4
*Leopold v. Dep't of Just.,*
   487 F. Supp. 3d 1 (D.D.C. 2020) ................................................................ 18, 19, 21, 22
*Lewis v. Dep't of Justice,*
   609 F. Supp. 2d 80 (D.D.C. 2009) ......................................................................... 29
*Machado Amadis v. Dep't of State,*
   971 F.3d 364 (D.C. Cir. 2020) .................................................................... 10, 13, 14, 26
*Martin v. Off. Of Special Counsel,*
   819 F.2d 1181 (D.C. Cir. 1987) ........................................................................ 17, 31
*Media Rsch. Ctr. v. Dep't of Just.,*
   818 F. Supp. 2d 131 (D.D.C. 2011) ...................................................................... 3, 4
*Meza v. Dep't of Justice,*
   719 F. Supp. 2d 1 (D.D.C. 2010) ........................................................................... 32

*Military Audit Project v. Casey*,
  656 F.2d 724 (D.C. Cir. 1981) ................................................................ 4, 6
*Muhammad v. Customs & Border Prot.*,
  559 F. Supp. 2d 5 (D.D.C. 2008) .............................................................. 4
*Nat. Res. Def. Council, Inc. v. Nuclear Regul. Comm'n*,
  216 F.3d 1180 (D.C. Cir. 2000) ................................................................ 5
*Nat'l Ass'n of Crim. Def.Laws. V. Dep't of Just. Exec. Off. For U.S. Att'ys*,
  844 F.3d 246 (D.C. Cir. 2016) ................................................................. 17
*New York Times Co. v. Dep't of Justice*,
  138 F. Supp. 3d 462 (S.D.N.Y. 2015) ................................................. 2, 22, 23, 26
*New York Times Co. v. Dep't of Justice*,
  939 F.3d 479 (2d Cir. 2019) .............................................................. 2, 22, 31
*NLRB v. Sears, Roebuck & Co.*,
  421 U.S. 132 (1975) ......................................................................... 6, 8
*Perry v. Block*,
  684 F.2d 121 (D.C. Cir. 1982) ................................................................ 4
*Petroleum Info. Corp. v. Dep't of Interior*,
  976 F.2d 1429 (D.C. Cir. 1992) ........................................................ 7, 9, 31
*Porup v. CIA*,
  997 F.3d 1224 (D.C. Cir. 2021) ............................................................... 4
*Reps. Comm. for Freedom of the Press v. FBI*,
  3 F.4th 350 (D.C. Cir. 2021) ................................... 8, 9, 10, 11, 13, 23, 24
*Reps. Comm. For Freedom of the Press v. Customs & Border Prot.*,
  567 F. Supp. 3d 97 (D.D.C. 2021) ........................................................... 13
*Rockwell Int'l Corp. v. Dep't of Justice*,
  235 F.3d 598 (D.C. Cir. 2001) ............................................................ 6, 27
*Rosenberg v. Dep't of*,
  *Def.*, 342 F. Supp. 3d 62 (D.D.C. 2018) .................................................... 13
*Russell v. Dep't of the Air Force*,
  682 F.2d 1045 (D.C. Cir. 1982) .............................................................. 8
*SafeCard Servs. Inc. v. SEC*,
  926 F.2d 1197 (D.C. Cir. 1991) .......................................................... 4, 19
*Schoenman v. FBI*,
  573 F. Supp. 2d 119 (D.D.C. 2008) ..................................................... 16, 18
*Selgjekaj v. EOUSA*,
  2021 WL 3472437 (D.D.C. Aug. 6, 2021) .................................................. 23
*Shapiro v. Dep't of Justice*,
  893 F.3d 796 (D.C. Cir. 2018) ................................................................ 4
*Spirko v. U.S. Postal Serv.*,
  147 F.3d 992 (D.C. Cir. 1998) ................................................................ 6
*Stone v. Castro*,
  72 F. Supp. 3d 186 (D.D.C. 2014) .......................................................... 27
*Summers v. Dep't of Justice*,
  140 F.3d 1077 (D.C. Cir. 1998) .............................................................. 5
*Sussman v. U.S. Marshals Serv.*,
  494 F.3d 1106 (D.C. Cir. 2007) ......................................................... 31, 32

*Tah v. Glob. Witness Publ'g, Inc.*,
   991 F.3d 231 (D.C. Cir. 2021) ................................................................ 3

*Tax Analysts v. IRS*,
   117 F.3d 607 (D.C. Cir. 1997) .............................................................. 21

*Vaughn v. Rosen*,
   523 F.2d 1136 (D.C. Cir. 1975) ....................................................... 10, 11

*Weisberg v. Dep't of Justice*,
   627 F.2d 365 (D.C. Cir. 1980) ................................................................ 3

*White v. Dep't of Just.*,
   952 F. Supp. 2d 213 (D.D.C. 2013) ...................................................... 17

*Williams v. Perez*,
   No. 15-5228, 2016 WL 520265 (D.C. Cir. Feb. 1, 2016) ................... 23, 26

*Wolf v. CIA*,
   473 F.3d 370 (D.C. Cir. 2007) ................................................................ 5

## Statutes

5 U.S.C. § 522(b) ..................................................................................... 5, 31

5 U.S.C. § 552(b)(5) ..................................................................................... 6

5 U.S.C. § 552(a)(4)(B) ................................................................................ 5

5 U.S.C. § 552(a)(8)(A)(i) ............................................................................ 6

Pub. L. No. 114–185 .................................................................................... 2

## Rules

Fed. R. Civ. P. 56(a) .................................................................................... 3

Defendant, Department of Justice ("Defendant" or "Department"), respectfully moves for summary judgment in this Freedom of Information Act ("FOIA") case brought by Plaintiffs Charlie Savage, Scott Shane, and the New York Times Co. The accompanying statement of undisputed material facts and declarations of John H. Durham ("Durham Declaration") and Douglas Hibbard ("Hibbard Declaration"), and their accompanying exhibits, support this motion. These documents show that the undisputed record establishes that the Department has conducted a reasonable search that has located records responsive to Plaintiffs' FOIA request,[1] released all reasonably segregable non-exempt records to Plaintiffs, and withheld only information the release of which would trigger foreseeable harm to the interests protected under FOIA Exemption 5. Thus, the Department is entitled to summary judgment.

## BACKGROUND

This case concerns two FOIA requests relating to Deparment investigations into whether federal laws were violated in connection with certain overseas interrogations by the Central Intelligence Agency ("CIA"). Compl. ¶¶ 10-11. The FOIA requests here seek reports, Federal Bureau of Investigation ("FBI") FD-302 interview documents, and FBI FD-1032 forms.[2] Compl. ¶¶ 23-24.

---

[1]    Pursuant to the May 1, 2023 Joint Status Report, Plaintiffs do not challenge the adequacy of Defendant's search in response to Plaintiffs' Requests. *See* Joint Status Report, dated May 1, 2023 (ECF No. 17, at 2).

[2]    After searching in response to Plaintiffs' FOIA requests, Defendant located no FD-1032s. Hibbard Decl. ¶ 13; *see also* Joint Status Report, dated February 13, 2023 (ECF No. 15). Because Plaintiffs do not challenge the reasonableness of Defendant's search, (*see* ECF No. 17, at 2), including its no records found result regarding the FD-1032s, Defendants do not argue in this motion regarding the FD-1032s included in Plaintiff's FOIA requests.

In 2008, the Attorney General, appointed John Durham, then an First Assistant United States Attorney in Connecticut (Hibbard Decl. ¶ 4, Ex. A), to look into the CIA's destruction of video tapes of detainee interrogations abroad. Compl. ¶ 12. In 2009, the subsequent Attorney General expanded Durham's mandate to cover the treatment of detainees during the interrogations themselves. Compl. ¶ 13.

In 2014, Plaintiffs filed suit in the U.S. Distict Court for the Southern District of New York (the "Southern District"), seeking the same documents at issue here. *See generally N.Y. Times Co. v. Dep't of Just.*, 138 F. Supp. 3d 462 (S.D.N.Y. 2015), *aff'd in part, rev'd in part*, 939 F.3d 479 (2d Cir. 2019). The parties argued the applicability of Exemption 5's deliberative process and attorney work product privileges to the Southern District and again on appeal to the Second Circuit, with the end result being limited release of one document, portions of which had been "expressly adopted" by the public statements of the then-Attorney General. *See generally N.Y. Times*, 939 F.3d 479. Also, in that litigation, Savage and New York Times conceded that deliberative process and attorney work product privileges applied to the reports at issue as the law stood at that time.[3] *See N.Y. Times,* 138 F. Supp. 3d at 470 (conceding deliberative process privilege applied to the reports at issue); *N.Y. Times,* 939 F.3d at 494 (conceding attorney work-product privilege applied to to the reports at issue).

For this case, in the interest of brevity, Defendant respectfully refers the Court to its Statement of Undispued Material Facts ("Def. Stmt.") for further background facts of this case. Furthermore, in support of Defendant's Motion for Summary Judgment, Defendant refers the Court to the Durham Declaration, which was originally filed in the Southern District, and the

---

[3]    The FOIA Improvement Act of 2016, has since added a foreseeable harm requirement to the analysis of the applicability of privileges under Exemption 5. Pub. L. No. 114–185, 130 Stat. 538 (2016).

Hibbard Declaration, as well as the exhibits attached thereto, and to the Department's *Vaughn* index (attached as Exhibit L to the Hibbard Declaration).

## LEGAL STANDARD

Summary judgement is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Eddington v. Dep't of Def.*, 35 F.4th 833, 836 (D.C. Cir. 2022) (quoting Fed. R. Civ. P. 56(a) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *Tah v. Glob. Witness Publ'g, Inc.*, 991 F.3d 231, 239 (D.C. Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Id.* Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

"Courts decide the 'vast majority' of FOIA cases on motions for summary judgment. *AARC v. CIA*, 317 F. Supp. 3d 394, 399 (D.D.C. 2018), *aff'd*, 781 F. App'x 11 (D.C. Cir. 2019) (*per curiam*) (quoting *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011)); *see also Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment."). An agency may be entitled to summary judgment in a FOIA case if it demonstrates that no material facts are in dispute, it has conducted an adequate search for responsive records, and each responsive record that it has located either has been produced to the Plaintiff or is exempt from disclosure. *See Weisberg v. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980). "To meet its burden, an agency may rely on declarations describing the applicability of a FOIA exemption to information that the agency has withheld."

3

*Energy Policy Advocates. v. Dep't of State*, Civ. A. No. 19-3307 (TNM), 2023 WL 4198200, at *2 (D.D.C. June 27, 2023) (citing *Shapiro v. Dep't of Just.*, 893 F.3d 796, 799 (D.C. Cir. 2018)).

"[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Lab.*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Rsch. Ctr.*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

Courts give agency declarations "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Porup v. CIA*, 997 F.3d 1224, 1237 (D.C. Cir. 2021) (quoting *SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (internal citations omitted). "The Court may grant summary judgment based solely on the agency's declarations if neither record evidence nor evidence of the agency's bad faith contradicts them." *Energy Policy Advocates*, 2023 WL 4198200, at *2 (citing *Aguiar v. DEA*, 865 F.3d 730, 734–35 (D.C. Cir. 2017)). Once the court determines that an agency has released all non-exempt material, it has no further judicial function to perform under FOIA and the FOIA claim is moot. *Muhammad v. Customs & Border Prot.*, 559 F. Supp. 2d 5, 7-8 (D.D.C. 2008); *see also Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982).

## ARGUMENT

### I.    The Department Properly Withheld Information Under FOIA Exemption 5.

Because the undisputed record demonstrates that the Department properly withheld information contained in these pages pursuant to Exemption 5, the Court should grant the Department summary judgment as to the propriety of its withholdings.

FOIA requires "disclosure of documents held by a federal agency unless the documents fall within one of nine enumerated exemptions[.]" *Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021); 5 U.S.C. § 552(b). Thus, "[a]lthough disclosure, not secrecy, is the dominant objective of [the FOIA]," FOIA does not allow the public to have unfettered access to government files. *Summers v. Dep't of Just.*, 140 F.3d 1077, 1080 (D.C. Cir. 1998) (quoting *Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 494 (1994) (noting that agencies may refuse to disclose information under the nine exemptions). The government agency bears the burden of demonstrating that the documents it has withheld fall into one of FOIA's nine exemptions from disclosure. *See* 5 U.S.C. § 552(a)(4)(B); *see also Nat. Res. Def. Council, Inc. v. Nuclear Regul. Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000).

To protect materials from disclosure, the agency must show that they come within one of the FOIA exemptions. *Summers*, 140 F.3d at 1080. "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 U.S. 370, 374–75 (D.C. Cir. 2007).

Although a *Vaughn* index is a common device used by agencies to meet their burden of proof, "the Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the

justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *CREW*, 478 F. Supp. 2d at 80 (quoting *Mil. Audit Project*, 656 F.2d at 738); *see also Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 998 n.4 (D.C. Cir. 1998) ("The form of the Vaughn index is unimportant and affidavits providing similar information can suffice." (citing *Gallant v. NLRB*, 26 F.3d 168, 172–73 (D.C. Cir. 1994))).

The Department's withholdings pursuant to Exemption 5 are appropriate. Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "Courts have construed this exemption to encompass the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context, including materials which would be protected under the attorney-client privilege, the attorney work-product privilege, or the executive deliberative process privilege." *Rockwell Int'l Corp. v. Dep't of Just.*, 235 F.3d 598, 601 (D.C. Cir. 2001) (citing *Formaldehyde Inst. v. Dep't of Health & Hum. Servs.*, 889 F.2d 1118, 1121 (D.C. Cir. 1989) (internal citations and quotations omitted); *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). The FOIA Improvement Act of 2016 added a "foreseeable harm" element to the Exemption 5 analysis, wherein an agency must provide a "focused, context-specific explanation about why disclosure would cause foreseeable harm to an interest protected by FOIA." *Energy Policy Advocates*, 2023 WL 4198200, at *2; *see also* 5 U.S.C. § 552(a)(8)(A)(i).

Here, in support of its Exemption 5 withholdings, the Department asserted both the attorney work-product privilege and the deliberative process privilege.

A.      **All the Reports and FD-302s are Interagency Records.**

As an initial matter, each of the documents at issue meet the threshold of being inter- or intra-agency documents. "Intra-agency" documents generally refer to those documents "addressed both to and from employees of a single agency." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9-10 (2001). Here, "[a]ll of the records withheld in full by [the Department] were created by and exchanged with officials in [the Deparment] and, accordingly, are intra-agency communications within the threshold of FOIA Exemption 5." *See* Hibbard Decl. ¶ 21. Accordingly, they fall within the realm of records covered by FOIA Exemption 5.

B.      **The Department properly withheld records under Deliberative Process Privilege.**

The Department found that two of the ten reports and their exhibits were exempted pursuant to both the attorney work-product privilege and the deliberative process privilege. *See Vaughn* Index at 1-2. These documents are the recommendations for full criminal investigations into the deaths of Individuals 1 and 2, and the attached exhibits. *Id.* (listing these documents as numbers five and seven). Additionally, certain of the exhibits are separately and independently protected by the attorney work-product privilege (*Vaugh* Index Doc. 7, Ex. 7A-7D) and the deliberative process privilege (*Vaughn* Index Doc. 7, Ex. 7B-7D) as they relate to Department investigations predating Durham's appointment. Hibbard Decl. ¶ 19.

The "ultimate aim" of the deliberative process privilege set forth in Exemption 5 is to "prevent injury to the quality of agency decisions." *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1433-34 (D.C. Cir. 1992) (internal quotations omitted).

Thus, three policy purposes underlie the deliberative process privilege:

[1] it protects creative debate and candid consideration of alternatives within an agency, and, thereby, improves the quality of agency policy decisions,

[2] it protects the public from the confusion that would result from premature exposure to discussions occurring before the policies affecting it had actually been settled upon, and

[3] it protects the integrity of the decision-making process itself by confirming that "officials should be judged by what they decided[,] not for matters they considered before making up their minds."

*Hall v. CIA*, 268 F. Supp. 3d 148, 157-58 (D.D.C. 2017) (quoting *Russell v. Dep't of Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982)).

Exemption 5 "protects not only communications which are themselves deliberative in nature, but all communications which, if revealed, would expose to public view the deliberative process of an agency." *Id.* at 158. "The agency is in the best position to know what confidentiality is needed to prevent injury to the quality of agency decisions." *Competitive Enter. Inst. v. Dep't of Treasury*, 308 F. Supp. 3d 109, 117 (D.D.C. 2018) (internal citations and quotation omitted). Accordingly, "there should be considerable deference to the agency's judgment as to what constitutes part of the agency give-and-take—of the deliberative process—by which the decision itself is made." *Id.* (internal citations and marks omitted); *see also Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (quoting *NLRB*, 421 U.S. at 151). The deliberative process privilege protects intra- or inter-agency documents that are "both predecisional and deliberative." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 362 (D.C. Cir. 2021). As Plaintiffs note, the FOIA Improvement Act of 2016 added a "foreseeable harm" element to the Exemption 5 analysis. Compl. ¶ 21. Here, the Deparment has properly invoked the deliberative process privilege under Exemption 5 to withhold in full two reports (Documents number 5 and 7) and their exhibits, comprised of recommendation memoranda to the Office of the Attorney General (OAG). *See* Hibbard Decl. ¶ 22; Vaughn Index at 1-2.

1.    <u>Predecisional</u>

The two recommendations for full investigation are predecisional because they were created before the Attorney General made a final decision on whether to conduct the full investigations recommended therein. Hibbard Decl. ¶ 26. "A document is predecisional if it was 'generated before the agency's final decision on the matter.'" *Reps. Comm.*, 3 F.4th at 362 (quoting *Sierra Club*, 141 S. Ct. at 785; *see also Petroleum Info., 976 F.2d at 1434* ("A document is predecisional if it was prepared in order to assist an agency decisionmaker in arriving at his decision, rather than to support a decision already made."). "Examples of predecisional documents include 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.'" *Cleveland v. United States*, 128 F. Supp. 3d 284, 298-99 (D.D.C. 2015) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

Here, both withheld recommendations for full investigation are predecisional because, as Mr. Hibbard explains, "they were drafted for the purposes of informing the final decisionmaker," the Attorney General, "on the scope of the investigations . . . [regarding] decisions that had not yet been made." Hibbard Decl. ¶ 26. They do not reflect a final agency decision or action, but rather, reflect Durham's recommendation "that, based on his investigations thus far, further investigation into two particular interrogation cases" should be conducted. *Id*. ¶ 26. While "Durham had full autonomy on the conduct of his investigations, . . . on the specific question of whether a full investigation should be launched" into the death of the two individuals, "Durham needed Attorney General approval." *Id*. ¶ 25; *see also* Durham Decl. ¶ 15. After receiving Durham's recommendations, the Attorney General was then to consider them in making his final decision

whether to conduct further investigation. Hibbard Decl. ¶ 25. Accordingly, the recommendations for full investigation are predecisional.

Additionally, exhibits to Document 5 and 7, "were part of a prior investigation before Mr. Durham's appointment." Hibbard Decl. ¶ 19. As a result, "[a]side from the privileges that attach to these documents because they reflect Mr. Durham's work product and deliberations . . . three of the exhibits (Documents 7-B through 7-D) are also separately and independently protected by the deliberative process privilege." *Id.* Documents 7-B and 7-C are drafts and are thus pre-decisional. *See Id.* ¶ 28. Document 7-D is likewise pre-decisional "because it was drafted for the purpose of informing the final decisionmaking on a recommendation regarding possible criminal prosecution." *Id.* ¶ 29.  Thus, exhibits 7-B through 7-D, also are predecisional.

## 2.    Deliberative

The two recommendations for full investigation are also deliberative because they were prepared to assist the Attorney General in making his legal decision on whether to conduct full investigations into the deaths. Deliberative records are those "prepared to help the agency formulate its position," *Sierra Club*, 141 S. Ct. at 786, by implicating the "consultative process" including communications which reflect the "type of back-and-forth exchange of ideas, constructive feedback, and internal debate over how best to promote and to preserve" the agency's proposed policies. *Reps. Comm.*, 3 F.4th at 364. In short, the "key to whether a document is deliberative is whether it is part of the 'give-and-take' of the 'consultative process.'"  *Id.* (quoting *Machado Amadis v. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020)); *see also Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975) (stating that documents come under the deliberative process privilege if they "make[] recommendations or express opinions on legal or policy matters")).

The D.C. Circuit has instructed Courts in this District to "focus[] on whether disclosure of the requested material would tend to discourage candid discussion within an agency." *Reps. Comm.*, 3 F.4th at 364. This is because the deliberative process privilege rests "on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Klamath*, 532 U.S. 1, 8-9 (2001); *accord Jud. Watch, Inc. v. Dep't of Just.*, 20 F.4th 49, 54 (D.C. Cir. 2021).

The two recommendations for full investigation are also deliberative because they make recommendations and express Durham's team's legal opinions on the legal decision pending before the Attorney general—whether to conduct full criminal investigations regarding the deaths. *See Vaughn*, 523 F.2d at 1144. "These memoranda contain an in-depth recitation, analysis, and evaluation of the facts and evidence uncovered in the course of [Durham's] preliminary reviews as well as supporting legal and factual justification for [his] recommendation that full criminal investigations were warranted under the governing standards." Durham Decl. ¶ 15. "These reports further outlined the key areas [Durham's team] would pursue in a full criminal investigation, as well as the potentially applicable criminal statutes." *Id.* By presenting the Attorney General with the evidence gathered thus far, possible courses of action, and a recommendation on which action to take, Durham, in these recommendation reports, participated in the "back-and-forth exchange of ideas, constructive feedback, and internal debate" as part of the "consultative process" that is the heart of the deliberative process privilege. *See Reps. Comm.*, 3 F.4th at 364. These reports contained Durham's "open and frank discussion" of his evaluation of the then-existing evidence, legal theories regarding how that evidence could support criminal charges, evidentiary

shortcomings, legal defenses, and ultimately a recommendation based on those pieces of legal analysis, by which he encouraged the Attorney General to further investigate the circumstances surrounding the two deaths at issue. Durham Decl. ¶ 15; *See Klamath*, 532 U.S. at 8-9. Therefore, the two recommendations for full investigation are deliberative.

Likewise, Exhibits 7-B through 7-D are also separately and independently deliberative. Document Nos. 7-B and 7-C are "deliberative" because they reflect deliberations by Department attorneys regarding whether or not to file criminal charges. Hibbard Decl. ¶ 28. Further, "Document No. 7-C reflects successive versions of a document and as such, shows the internal development of the Department's position on a contemplated legal question related to the matters at issue." *Id.* Similarly, Document 7-D is deliberative "because it reflects deliberations by a Department attorney regarding the development of a legal determination concerning whether or not to file criminal charges." *Id.* ¶ 29.  Thus, an independent, additional, basis exists to conclude Exhibits 7-B through 7-D are deliberative.

### 3.    Foreseeable Harm

Finally, conducting a foreseeable harm analysis, the Department properly concluded that withholding the two recommendations for full investigation, as well as their exhibits, was appropriate because their disclosure "would harm an interest protected by Exemption 5." *See* 5 U.S.C. § 552(a)(8)(A)(i)(I).

 "Congress intended that the technical application of an exemption was not sufficient without a showing that disclosure also harmed an interest the exemption sought to protect in the first place." *Jud. Watch, Inc. v. Dep't of Com.*, 375 F. Supp. 3d 93, 101 (D.D.C. 2019). "To withhold exempt records, [the agency] must provide a focused, context-specific explanation about why disclosure would cause foreseeable harm to an interest protected by FOIA." *Energy Policy*

*Advocates*, 2023 WL 4198200, at *2 (citing 5 U.S.C. § 552(a)(8)(A)(i)(I)). "[A] mere link between the withheld information and some foreseeable harm, this is no longer enough." *Id.* (citing *Reps. Comm. For Freedom of the Press v. Customs & Border Prot.*, 567 F. Supp. 3d 97, 109 (D.D.C. 2021) (describing this shift)). "Congress added the foreseeable harm requirement specifically to limit "agency overuse and abuse of Exemption 5 and the deliberative process privilege." *Reps. Comm.*, 567 F. Supp. 3d at 120 (citing *Reps. Comm.*, 3 F.4th at 361). "To approve withholding under one of the FOIA exemptions . . . a district court must find that the agency has met its burden with respect to [foreseeable harm and segregability]." *Ecological Rts. Found. v. EPA*, 541 F. Supp. 3d 34, 64 (D.D.C. 2021) (quoting *Machado*, 971 F.3d at 370–71).

"To be clear, the court does not read the statutory 'foreseeable harm' requirement to go so far as to require the government to identify harm likely to result from disclosure of each of its Exemption 5 withholdings." *Rosenberg v. Dep't of Def.*, 342 F. Supp. 3d 62, 79 (D.D.C. 2018), *on reconsideration in part*, 442 F. Supp. 3d 240 (D.D.C. 2020). "A categorical approach will do [so long as] the government [does] more than perfunctorily state that disclosure of all the withheld information—regardless of category or substance—'would jeopardize the free exchange of information between senior leaders within and outside of the [agency].'" *Id.* (citing to language in plaintiff's complaint). Even with limited explanation from the agency, the "context and purpose of withheld information can support a finding of foreseeable harm." *Reps. Comm.*, 3 F.4th at 372.

In conducting its foreseeable harm analysis here, the Department determined that disclosure of the recommendations for full investigation "would undermine the ability of Department of Justice officials to freely provide candid and forthright evaluations of the matters before the Attorney General and to the internal development of final agency actions, particularly as they relate to high profile, sensitive investigatory matters[.]" Hibbard Decl. ¶ 30. The

Department described the contents of the reports, noting "these two memoranda embody Mr. Durham's recommendation to Department leadership that two cases arising out of the CIA interrogations investigation receive full criminal investigations." *Id.* ¶ 30. Further description of the contents of the reports, as previously given by Mr. Durham, were also considered and provided as part of the foreseeable harm analysis. *See* Durham Decl. ¶ 15 (describing the recommendations for full investigation as "contain[ing] an in-depth recitation, analysis, and evaluation of the facts and evidence uncovered in the course of [the] preliminary reviews; . . . supporting legal and factual justification for [the] recommendation; . . . key areas [to] pursue in a full criminal investigation; [and] potentially applicable criminal statutes."). Similarly, Documents 7-B through 7-D "reflect the preliminary assessments, deliberations and recommendations of the Department attorneys handling the prior investigation." Hibbard Decl. ¶ 30.

The Department then warned that "[i]f memoranda such as these [were to be] routinely released to the public, Department employees [would] be much more circumspect in their discussions with each other and in providing all pertinent information and viewpoints to senior officials in a thorough and timely manner." Hibbard Decl. ¶ 30. Such a "lack of candor would seriously impair the Department's ability to foster the forthright, internal discussions necessary for efficient and proper Executive Branch decisionmaking." *Id.* ¶ 30. By describing the contents of the documents and the specific harm to the decisionmaking process that would ensue upon its release, the Department "specifically focused on the information at issue in the [records] under review, and it concluded that disclosure of that information would chill future internal discussions." *Machado*, 971 F.3d at 371. In doing so, the Department "correctly understood the governing legal requirement and reasonably explained why it was met here, [and thus,] permissibly withheld the privileged information." *Id.*

The Department further explained that the recommendations for full investigation were preliminary assessments, which would be refined by the subsequent full investigation if the Attorney General approved the recommendation to further investigate. Hibbard Decl. ¶¶ 30-31. The harm in disclosing preliminary assessments is two-fold: first, it could chill Department personnel from providing decisionmakers with candid and well-informed information needed to decide complex legal questions, and second, it could create public confusion as to what the final decision is if some or all recommendations are not adopted. *Id.*

"[I]f subordinates knew that the public, including foreign adversaries, could access the information," it would "chill internal deliberations" and "degrade the quality of advice that the [decisionmaker] receives." *Energy Policy Advocates*, 2023 WL 4198200, at *4. Here, knowing that the Attorney General could have declined their recommendations, "[i]f these memoranda were to be released to the public, Department officials would be wary about providing viewpoints on all angles critical to the decisionmaking process when their input is solicited by Department decisionmakers." Hibbard Decl. ¶ 31.

Likewise, "release of a subordinate lawyer's opinions and ideas would cause public confusion about whether information they contain was a final decision." *Energy Policy Advocates*, 2023 WL 4198200, at *4 (internal quotations omitted). Instead, the Department "attorneys preparing such materials must feel free to create the most thorough and candid documents possible so that Executive Branch decision-makers are well-informed as they ultimately decide on legal questions." Hibbard Decl. ¶ 31. "Releasing such inchoate material could certainly mislead and foreseeably harm the agency's processes." *Energy Policy Advocates*, 2023 WL 4198200, at *4.

Therefore, it is "critical that [Department] employees' candid views are protected from disclosure to ensure that senior leadership will receive similarly forthright advice on such critical

matters in the future." Hibbard Decl. ¶ 31. Ultimately, "[i]ntra-agency decisionmaking is at its best when officials are able to focus on the substance of their recommendations and not on whether their views may at some point be made publicly available." Hibbard Decl. ¶ 30; *see also Klamath*, 532 U.S. at 8-9 ("[D]eliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news[.]" (internal quotations omitted)).

Thus, the Department has established that both recommendations for full investigation were predecisional and deliberative intra-agency memorandum whose release would cause foreseeable harm. Accordingly, the Court should grant the Department summary judgment as to this issue because these documents were properly withheld under Exemption 5 pursuant to the deliberative process privilege.

## C. The Department Properly Withheld Records Under the Attorney Work-Product Privilege.

"FOIA Exemption (b)(5) incorporates the work-product doctrine and protects against the disclosure of attorney work product." *Jud. Watch, Inc. v. Dep't of Just.*, 432 F.3d 366, 369 (D.C. Cir. 2005). It protects documents and memoranda prepared by attorneys in contemplation of litigation and/or administrative proceedings. *Schoenman v. FBI*, 573 F. Supp. 2d 119, 143 (D.D.C. 2008). The attorney work-product privilege is broader than the other civil discovery privileges in that it protects factual material that is contained within the attorney work product from disclosure. *Jud. Watch*, 432 F.3d at 371 ("[F]actual material is itself privileged when it appears within documents that are attorney work-product."). For that reason, factual material found within

attorney work-product documents is not segregable from the legal analysis. *Martin v. Off. Of Special Counsel*, 819 F.2d 1181, 1184 (D.C. Cir. 1987).

 The attorney work-product privilege aims "to protect the integrity of the adversary trial process," by providing lawyers "a zone of privacy within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." *Bagwell v. Dep't of Just.*, 588 F. Supp. 3d 58, 73 (D.D.C. 2022) (citing *Nat'l Ass'n of Crim. Def. Laws. v. Dep't of Just. Exec. Off. For U.S. Att'ys*, 844 F.3d 246, 251 (D.C. Cir. 2016) (internal citation and quotation marks omitted)).

 The attorney work-product privilege applies before litigation commences, as long as there is "some articulable claim, likely to lead to litigation." *In re Apollo Grp., Inc. Sec. Litig.*, 251 F.R.D. 12, 21 (D.D.C. 2008), *aff'd on other grounds*, 329 F. App'x 283 (D.C. Cir. 2009) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 865 (D.C. Cir. 1980)). The privilege extends to documents that are administrative in nature that are prepared in anticipation of litigation. *See White v. Dep't of Just.*, 952 F. Supp. 2d 213, 219 (D.D.C. 2013) (holding that administrative forms used for tracking and describing the statuses of investigations are exempt from disclosure pursuant to the attorney work-product privilege). It covers documents relating to recommendations in preparation for trial, including recommendations to forego litigation and/or settlement proposals. *Jud. Watch, Inc. v. Dep't of Homeland Sec.*, 926 F. Supp. 2d 121, 139 (D.D.C. 2013) (emphasis added). The privilege also covers attorney work-product prepared by attorneys who are not employed as litigators and to non-attorneys who are supervised by attorneys. *Jud. Watch, Inc. v. Dep't of Just.*, 806 F. App'x 5, 7 (D.C. Cir. 2020).

 Here, all the reports identified in the *Vaughn* Index and the FD-302s are wholly exempt from disclosure by the attorney work-product privilege under Exemption 5. "[A]ll ten reports

identified . . . cover an exhaustive analysis of legal theories, evidentiary analysis, strengths of various defenses, and detailed descriptions applying evidence to legal theories, and have therefore been [properly] withheld in their entireties . . . ." Hibbard Decl. ¶ 32.

        1.    All the Reports and FD-302s Were Prepared By an Attorney in Anticipation of Litigation.

First, "[a]ll of the reports and FD-302s withheld pursuant to the attorney work-product privilege were created by and/or under the supervision of an attorney[,]" *i.e.,* Mr. Durham. Hibbard Decl. ¶ 37; *see also Schoenman*, 573 F. Supp. 2d at 143. Durham's team was comprised of five Deparment attorneys and fourteen FBI special agents, Durham Decl. ¶ 5, all working at Durham's instruction to complete legal tasks and analysis. *See Jud. Watch*, 806 F. App'x at, 7 (applying attorney work product privilege to non-attorneys who are supervised by attorneys). The documents here were created by Durham and other members of his team "in the course of making legal determinations on matters assigned by the Department's senior leadership, as well as in providing legal advice and recommendations on the need to further investigate two of the matters assigned." Hibbard Decl. ¶ 34. The interviews underlying the FD-302s were "done under [Durham's] supervision and at [his] direction" and he "personally reviewed virtually all" and "assisted in editing" many of the FD-302s. Durham Decl. ¶¶ 12, 20; *see Leopold v. Dep't of Just.*, 487 F. Supp. 3d 1, 11 (D.D.C. 2020) (upholding Department's withholding of FD-302s when "FBI investigative personnel drafted the FD-302s, [and] attorneys [] review[ed] the draft FD-302 and, if necessary, suggest[ed] edits.").

Also, all the reports and FD-302s were created before any litigation commenced. These documents were prepared as part of the investigation and analysis as to whether litigation should be commenced. After thorough investigation and analysis, the ultimate recommendation in these documents was that no individual should be prosecuted. Thus, as no litigation ultimately occurred,

these documents were all prepared before any litigation. *See Apollo*, 251 F.R.D. at 21. (applying attorney work-product privilege to documents prepared in investigation preceding litigation).

Second, these documents were all created in anticipation of litigation because whether to litigate was the subject of the reports and investigations. In conducting the investigation and preparing the reports, Durham and his team had "a subjective belief that litigation was a real possibility," *Bagwell*, 588 F. Supp. 3d at 73 (internal citation omitted), because whether to initiate litigation was the mandate from the Attorney General that initiated the investigations and creation of the reports. "[W]here, [as here,] an attorney prepares a document in the course of an active investigation focusing upon specific events and a specific possible violation by a specific party, it has litigation sufficiently 'in mind' for that document to qualify as attorney work product." *Apollo*, 251 F.R.D. at 21 (quoting *SafeCard Servs.*, 926 F.2d 1197).

As this Court has long held, attorney work-product privilege applies to recommendations to forego litigation and reasons for declining prosecution. *Jud. Watch*, 926 F. Supp. 2d at 139 (finding attorney work product privilege covers documents relating to recommendations in preparation for trial, including recommendations to forego litigation and/or settlement proposals). "[W]here an attorney prepares a document in the course of an active investigation focusing upon specific events and a specific possible violation by a specific party, it has litigation sufficiently 'in mind' for that document to qualify as attorney work product." *Bagwell*, 588 F. Supp. 3d at 73–74 (quoting *SafeCard Servs.*, 926 F.2d at 1203. In *Kishore v. Dep't of Just.*, 575 F. Supp. 2d 243, 259 (D.D.C. 2008)*, this Court applied the attorney work-product privilege to documents explaining the government's reasons for declining prosecution. Most markedly, the Court applied the attorney work product privilege in *Leopold*, 487 F. Supp. 3d at 11, finding that FD-302s created by the

Special Counsel's team "in anticipation of the potential for criminal charges" satisfied the "in anticipation of litigation" requirement.

Here, the records were created in the anticipation of the potential for criminal charges. They "exhaustively detail" Mr. Durham's analysis "on whether federal laws were violated, and on whether to prosecute any violations of such laws, including a detailed description applying evidence to legal theories, assessment of the strengths of various defenses, and assessment of potential litigation risks in consideration of relevant legal precedent." Hibbard Decl. ¶ 34. Moreover, Documents 5 and 7 contain. Durham's "legal and factual justification for [his] recommendation that full criminal investigations were warranted under the governing standards, . . . outlin[ing] the key areas [he and his team] would pursue in a full criminal investigation, as well as the potentially applicable criminal statutes." Durham Decl. ¶ 15.

"All of the reports and memoranda of decision reflect the core prosecutorial decisionmaking of Mr. Durham, while assessing the viability or propriety of pursuing further legal action based on his review of the evidence, and application of these assessments to current or contemplated legal actions." Hibbard Decl. ¶ 34. Accordingly, the attorney work product privilege applies to Attorney Durham's recommendation to forego litigation and decline prosecution in these documents. *See Kishore,* 575 F. Supp. 2d at 259; *see also Jud. Watch*, 926 F. Supp. 2d at 139.

Likewise, Documents 7-A through 7-D "relate to a previous investigation independent from Mr. Durham's investigation." Hibbard Decl. ¶ 35. Therefore, "aside from the privilege that attaches to the exhibits because they reflect Mr. Durham's work product, certain of those exhibits, specifically Documents 7-A through 7-D, are also separately and independently protected by the attorney work-product privilege of Exemption 5 of the FOIA because they constitute the work product of other Department attorneys created during the course of the prior investigation." *Id*.

Specifically, "Documents Nos. 7-A and 7-B are letters drafted by Department attorneys that were created as part of a separate, prior investigation into the death of the detainee that was the subject of Durham's investigation, and reflect legal analysis regarding possible criminal prosecution." *Id.* And "Document Nos. 7-C and 7-D are legal memoranda drafted by Department attorneys as part of the same prior investigation, and similarly reflect legal analysis and recommendations regarding possible criminal prosecution." *Id.*

Furthermore, the FD-302s are covered by attorney work product privilege because they contain both factual information and Durham's mental impressions and strategies about the investigation. *See* Hibbard Decl. ¶¶ 36-37; *see also Jud. Watch, Inc. v. Dep't of Just.*, 806 F. App'x 5, 6 (D.C. Cir. 2020) ("The attorney work-product privilege has traditionally been used to protect the 'files and the mental impressions of an attorney.'" (quoting *Hickman v. Taylor*, 329 U.S. 495, 510, (1947)). Durham and his team conducted the interviews underlying the FD-302s "in connection with [their] evaluation of whether criminal prosecutions were warranted" and by "actively participat[ing] in the questioning of witnesses," they revealed their thinking on the substance of the case. Durham Decl. ¶ 12.

The attorney work-product privilege covers not just legal analysis, but also the factual information considered in forming that analysis. *See Krocka v. Exec. Off. for U.S. Att'y*, Civ. A. No. 17-2171 (CRC), 2019 WL 690341, at *5 (D.D.C. Feb. 19, 2019). "Any part of a document prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under Exemption 5." *Id.* (quoting *Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir. 1997) (cleaned up); *see also Leopold*, 487 F. Supp. 3d at 12 ("Plaintiff ignores that the FD-302s, as factual recitations of what occurred during the interview, are also protected by the attorney work product privilege[.]" (internal citations and

quotations omitted)). "Accordingly, to the extent that the information contained in the FD-302s are factual in nature, they are nevertheless protected by the attorney work product privilege and are exempt from disclosure pursuant to Exemption 5 of the FOIA." *Leopold*, 487 F. Supp. 3d at 12.

Moreover, the 2014 litigation involving these same documents resolves the first two portions of the attorney work product analysis, that the documents at issue here were created (1) by or under the supervisor of an attorney and (2) in anticipation of litigation. *See N.Y. Times*, 939 F.3d at 489 ("It is not disputed here that Durham's memoranda were attorney work product at the time they were drafted[.]"); *see also N.Y. Times*, 138 F. Supp. 3d at 476.

In the 2014 litigation, Plaintiffs did not challenge the applicability of the attorney work product to the reports at issue, which the Second Circuit noted was "part[ially] because Durham prepared them in anticipation of possible criminal prosecutions." *N.Y. Times*, 939 F.3d at 494 ("It is not disputed here that Durham's memoranda were attorney work product at the time they were drafted[.]"); *see also N.Y. Times*, 138 F. Supp. 3d at 476 ("The parties agree that all the memoranda sought in this case are covered by the work product doctrine and are therefore within Exemption Five of FOIA."). Plaintiffs agreed in that litigation that both the reports were prepared by or under the supervision of an attorney in anticipation of litigation. Since 2014, nothing has changed regarding the creation of the documents, nor does Plaintiff argue it has. Accordingly, as Plaintiffs conceded in the prior litigation, all the reports satisfy the first two prongs of the attorney work product privilege analysis.

In the 2014 litigation, Plaintiff did, however, challenge whether the attorney work product privilege applied to the FD-302s. *See N.Y. Times*, 138 F. Supp. 3d at 475-76. The Southern District reasoned that the FD-302s reveal Durham's mental impressions and strategic decisions about the investigation, through the selection of whom to interview and questions to ask witnesses, which

reveal Durham's thinking and strategy about the substance of the case. *N.Y. Times*, 138 F. Supp. 3d at 476. After completing a thorough analysis, the District Court found that the FD-302s were exempt from disclosure under the attorney work-product privilege. Accordingly, pursuant to the principle of *res judicata*, the Southern District's decision applies here to establish that the FD-302s—the same documents that were at issue in that litigation—satisfy the first two prongs of the attorney work product privilege analysis because they were prepared by or under the supervision of an attorney in anticipation of litigation. *See Williams v. Perez*, No. 15-5228, 2016 WL 520265, at \*1 (D.C. Cir. Feb. 1, 2016) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.")).

In the 2014 litigation, Plaintiffs did not, however, did not rebut the foreseeable harm because foreseeable harm was not an element under the statute at that time.

## 2.    Foreseeable Harm

"There is a reasonably foreseeable harm in release of the reports and FD-302s prepared during the course of the CIA tapes and CIA interrogation investigations." Hibbard Decl. ¶ 33.

As noted above, the FOIA Improvement Act of 2016 added a "foreseeable harm" element to the Exemption 5 analysis. Compl. ¶ 21. "To date, the D.C. Circuit has applied this requirement only to the deliberative process privilege, but the text is not so limited." *Energy Policy Advocates*, 2023 WL 4198200, at \*7 (citing *Reps. Comm.*, 3 F.4th at 369–70). Indeed, at least one Court in this District has applied the foreseeable harm requirement to records withheld under the attorney work-product privilege. *See Selgjekaj v. Exec. Off. of U.S. Att'ys*, No. 20-2145, 2021 WL 3472437, at \*5 (D.D.C. Aug. 6, 2021) (reiterating that what is needed to meet this burden is "context specific" and may be "satisfied if '[t]he very context and purpose of' the withheld document 'make

the foreseeability of harm manifest'") (quoting *Reps. Comm.*, 3 F.4th at 372) and finding disclosure would harm interests protected by attorney work-product privilege because it is "hardly debatable" "that government's ability to prosecute would be impeded if file jacket prepared in contemplation of a complex financial fraud prosecution were released"). This is supported by the structure of the statute, which indicates that the foreseeable harm requirement applies to all exemptions, to varying degrees. Other courts have also found the foreseeable harm requirement to apply to withholdings under the attorney work-product privilege. *See, e.g. Black Hills Clean Water All. v. U.S. Forest Serv.*, Civ. A. No. 20-5034, 2022 WL 2340440, at *10 (D.S.D. June 29, 2022) (requiring a foreseeable harm showing by the agency to invoke the attorney work-product privilege).

Even if the foreseeable harm requirement does apply to attorney work-product privilege, the burden to establish foreseeable harm is lower than when applied to other exclusions. An agency's foreseeable harm burden "may be more easily met when invoking [] privileges [other than deliberative process] . . . for which the risk of harm through disclosure is more self-evident and the potential for agency overuse is attenuated." *Energy Policy Advocates,* 2023 WL 4198200, at *7. The attorney work product privilege should fall within this category. The attorney-client privilege is held to this lowered burden. *Id.* Just as with the attorney-client privilege, releasing attorney work product "would undoubtably undermine our legal culture" because agencies "would lose an important tool in their decisionmaking process"—attorneys' ability to candidly evaluate legal options and conduct legal analysis. *See id.* (quoting *Reps. Comm.*, 3 F.4th at 369–70) (discussing attorney-client privilege)). In the same way that disclosing attorney-client privilege records would "undermine the ability and willingness of executive branch officials to seek legal advice before making decisions about issues with significant legal ramifications," *id.* at *7, releasing attorney work product privilege would undermine the ability and willingness of

executive branch attorneys to candidly evaluate and assess legal options in providing legal advice and would impede the Government's prosecutorial determinations. Because release of the documents here meets the higher foreseeable harm standard required for withholdings under the deliberate process privilege, it certainly meets the lowered foreseeable harm burden applicable to withholdings under the attorney work-product privilege.

Here, "[d]isclosure of [the reports and FD-302s] would reveal CIA tapes and interrogation investigations attorneys' mental impressions, conclusions, opinions, or legal theories concerning anticipated or pending litigation, and have been therefore withheld." Hibbard Decl. ¶ 37. Conducting investigations to inform their application of prosecutorial discretion is a fundamental function of Department attorneys. *Id.* Disclosure of the records at issue here would "hinder the government's ability to investigate" future legal violations because Deparment "attorneys would no longer feel free to pursue lines of questioning, [to explore] avenues of investigation, or to memorialize important thoughts on potential litigation strategies for fear that the information might be disclosed to the detriment of the Government's current and future litigating positions." *Id.*

Neither the passage of time nor the unique nature of the investigations ameliorates the harms. Hibbard Decl. ¶ 37. Instead, because of the rare nature of investigations into highly sensitive matters of national controversy, there is a heightened foreseeable harm in releasing this information. *Id.* "If a special prosecutor or special counsel"—such as Durham and his team in this case— "is aware that their core legal work-product . . . would be released after a designated amount of time passes, they will be hindered in their ability to fully express and document their work, and later special prosecutors and counsels would likewise be chilled." *Id.* Because the records here deal with "issues of national controversy and concern . . . it is crucial that attorney work-product material be kept privileged to ensure the integrity of high profile and sensitive investigations that

are central to the Department's mission." *Id.* "The FD-302s and reports prepared by Mr. Durham and his investigatory team in the course of the CIA tapes and CIA interrogations investigations fit squarely within the core prosecutorial work of the Department and as such, are thus protected by the attorney work-product privilege." *Id.*

As it did for the foreseeable analysis under the deliberative process privilege, the Department has met its burden by describing the contents of the documents and the specific harm to the decisionmaking process that would ensue upon their release. The Department "specifically focused on the information at issue in the [records] under review, and it concluded that disclosure of that information would chill future internal discussions." *Machado*, 971 F.3d at 371. In doing so, the Deparment "correctly understood the governing legal requirement and reasonably explained why it was met here, [and thus,] permissibly withheld the privileged information." *Id.*

### D.    The Department Has Not Waived its Attorney Work-Product Privilege.

In the related 2014 litigation, Plaintiffs' main challenge was that, although attorney work-product privilege applied to all the reports and FD-302s, Defendant had nonetheless waived that privilege through public statements made by the Attorney General expressly adopting the records. *See generally N.Y. Times*, 939 F.3d 479*; N.Y. Times*, 138 F. Supp. 3d. 462. Aside from the limited portion of the Final Report on Preliminary Review (*Vaughn* Index, number eight), that was disclosed pursuant to its order, the Second Circuit found Plaintiff's argument unpersuasive.[4]

As an initial matter, because nothing has changed since the 2014 Southern District litigation and the appeal of that case, the principle of *res judicata* bars Plaintiffs' argument that the Department waived its attorney work-product privilege. *See Williams*, 2016 WL 520265, at *1;

---

[4]    Although Plaintiffs filed their original case in 2014, the Second Circuit did not issue its ruling until 2019, well after the passage of the FOIA Improvement Act of 2016. In its opinion, however, the Second Circuit did not mention the effect of the 2016 law on this litigation.

*Stone v. Castro*, 72 F. Supp. 3d 186, 189 (D.D.C. 2014) ("[r]es judicata forecloses all that was or could have been litigated in a previous action, and any issue that was raised and decided in a previous action."). Plaintiffs first asserted that "in December 2014, large portions of the [Senate Select Committee on Intelligence's ("Select Committee's")] report were declassified and released to the public." Compl. ¶ 20. Plaintiffs, however, confuse the materials from this case produced to the Select Committee with a separate Select Committee report that was declassified. *Compare id.* *with* Hibbard Decl. ¶ 44, n.13.

Exhibit N to the Hibbard Declaration is the Select Committee's letter to the Attorney General requesting a copy of "Durham's investigation report into the destruction of interrogation videotapes by the CIA (known as the Durham Report)." Hibbard Decl. Ex. N at 1 (referencing *Vaughn* Index, document one). Accordingly, as detailed in Hibbard Declaration Exhibit O, the Department provided a redacted version of the executive summary of the Durham Report for secured viewing by a limited number of security cleared Select Committee members and staffers in a secured location. Exhibit O indicates that the attached Durham Report maintained its classification of Top Secret despite this limited viewing.

This act alone cannot be a waiver of the Department's attorney work-product privilege because in making the documents available for viewing, the Department gave instructions and set parameters to ensure the documents were not made public. *See Rockwell*, 235 F.3d at 604 (finding no waiver when "the Justice Department gave the documents to the Subcommittee only after the Subcommittee expressly agreed not to make them public"). Nor did this limited viewing by Select Committee members, constitute "releasing the report to the public" as Plaintiff claims. *See Heggestad v. Dep't of Just.*, 182 F. Supp. 2d 1, 13 (D.D.C. 2000) ("this Circuit has explicitly held that a document otherwise covered by the deliberative process privilege does not lose this status

merely because it was disclosed to a member of Congress without an explicit warning of its confidential status."); *See also Buzzfeed, Inc. v. FBI*, 613 F. Supp. 3d 453, 471 (D.D.C. 2020) ("If release to a congressional body of a document exempt from disclosure under the FOIA does not amount to a waiver of the governmental privilege, it makes conceptually no difference whether the underlying exemption provision relates to law enforcement, to the government's internal deliberative processes, or to some other privileged activity.").  Instead, upon request from Congress, the Department allowed select security cleared Select Committee members and staffers limited viewing of the document in a controlled location. Thus, this document was not released to the public and thus, "there was no waiver of Exemption 5 due to these circumstances." Hibbard Decl. ¶ 41.

Nor was the Durham Report declassified in December 2014.[5] Instead, as referenced in Hibbard Declaration Exhibit P, a different Select Committee Report—the Senate Select Committee on Intelligence Executive Summary of the "Committee Study of the Central Intelligence Agency's Detention and Interrogation Program"—was declassified in December 2014. The declassification of this separate Select Committee report does not waive the application of the Attorney Work Product Privilege to the Durham Report (Document 1).

Next, Plaintiffs allege that "additional facts about the CIA program have continued to be declassified as part of the discovery proceedings in the military commission system at Guantanamo Bay, Cuba." Compl. ¶ 20. As part of the discovery process before the Military Commissions, classified summaries of certain FD-302s were provided to security-cleared defense counsel under

---

[5]       As previously noted, the Parties have agreed to bifurcate the briefing in this case, focusing here on the Department's Exemption 5 withholdings. The issue of whether portions of the Durham Report have been declassified is reserved for further briefing on the Department's Exemption 1 withholdings, if such briefing becomes necessary.

a strict protective order. Hibbard Decl. ¶ 42. The protective order, Hibbard Declaration Exhibit P,

details that "[a]ll classified documents or information provided or obtained in connection with this

case remain classified at the level designated, . . . unless the documents bear a clear indication that

they have been declassified." Hibbard Decl. Ex. Q. at 10. The protective order further details that

in order to view any classified materials related to the cases, all defense counsel must have a

security clearance, a need-to-know, a signed non-disclosure agreement, and a signed memorandum

of understanding ensuring they will only access the documents at authorized sites. *Id.* at 9-11. The

protective order further requires that "[n]o member of the Defense, including any defense witness,

is authorized to disclose any classified information obtained during this case," even in response to

a subpoena or court order. *Id.* at 10.

  As with the strict limits placed on the viewing of the Durham Report by the Select

Committee, the release of summaries of certain FD-302s from the Military Commission

prosecutors to defense counsel has been strictly controlled to a small number of security-cleared

individuals. It has certainly not been "publicly disclosed" so as to forfeit its protection under the

attorney work-product privilege. *See Cottone v. Reno*, 193 F.3d 550, 556 (D.C. Cir. 1999) ("a

constitutionally compelled disclosure to a single party simply does not enter the public domain");

*Lewis v. Dep't of Just.*, 609 F. Supp. 2d 80, 85 (D.D.C. 2009) (rejecting argument that government

"waived its right to invoke FOIA exemptions because of disclosures made to him during his

criminal proceedings"). Moreover, to be clear, no portions of the reports at issue in this case have

been released to the public as part of the discovery proceedings in the Military Commission system.

*See Davis v. Dep't of Just.*, 968 F.2d 1276, 1280 (D.C. Cir. 1992) ("[this Circuit's] public domain

cases . . . require the requester to point to 'specific' information identical to that being withheld.

. . . [and Plaintiff] has the burden of showing that there is a permanent public record of the exact

portions he wishes"). Accordingly, the application of the attorney work-product privilege to all of the reports and FD-302s has not been waived.

Finally, Plaintiffs assert that "[t]here have also been significant releases of FD-302 forms via FOIA in the intervening years, suggesting a change in government policy or, at a minimum, indicating that the withholding of the forms may not be justified in many cases under the new standard set by the FOIA Improvement Act. Compl. ¶ 22 (citing *N.Y. Times Co. v. Exec. Off. for U.S. Att'ys*, Civ. A. No. 22-3609 (S.D.N.Y.); *Leopold v. Dep't of Just*, Civ. A. No. 19-1278 (D.D.C.)).[6] In *Leopold*, however, the Court upheld the Department's withholding of FD-302s under the attorney work-product privilege and executive privilege.

Moreover, disclosure in one instance does not compel disclosure here. Plaintiffs assert no changes since the Second Circuit's prior opinion (other than the addition of the foreseeable harm requirement, discussed *supra* Part I(C), that would now compel the release of the FD-302s. Accordingly, Plaintiffs fail to establish that any change since its first case in 2014 has dislodged Defendant's appropriate Exemption 5 withholdings under the attorney work-product privilege.

Therefore, because the reports and FD-302s were prepared in anticipation of litigation by or under the supervision of an attorney and because their disclosure would cause foreseeable harm, the Department properly withheld these documents under Exemption 5's attorney work-product privilege. No waiver has occurred.

---

[6] Plaintiffs cite generally to the dockets of these cases without pointing specifically to any order therewithin.

II.    **The Department Found No Additional Portions of the Documents to Be Reasonably Segregable.[7]**

The Department has met its segregability burden. An agency must provide the FOIA requestor with any reasonably segregable portion of a record after deletion of the portions which are exempt. 5 U.S.C. § 522(b). Segregable information that is "inextricably intertwined" with exempt material need not be provided. *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002). The "'burden is on the agency' to show that the requested material falls within a FOIA exemption." *Jud. Watch, Inc. v. Dep't of Just.*, 800 F. Supp. 2d 202, 209 (D.D.C. 2011); *see also Petroleum Info.,* 976 F.2d at 1433. The agency is entitled to a presumption that it complied with its obligation to disclose reasonably segregable material. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). If the requester successfully rebuts this presumption, the burden lies with the agency to show that no segregable, non-exempt portions were withheld. *Id.*

Here, during its review, the Department "carefully reviewed each of the [reports] to determine whether any information could be segregated for release."[8] *See* Hibbard Decl. ¶ 44. The Department determined that all ten reports at issue in this case are covered by the attorney work-

---

[7]    In the related litigation, *N.Y. Times*, 939 F.3d at 479, the Second Circuit held that certain of the Attorney General's statements served to waive "the privileges over [specific] sections of the memoranda and exhibits[.]" *Id.* at 496. Consistent with the Second Circuit's ruling, the Department released only the parts of the May 26, 2011, Final Report on Preliminary Review (*Vaughn* Index, number eight) where limited waiver of the work-product privilege applies. Hibbard Decl. ¶ 44, n.14. All discussion in this section assumes the Court's knowledge that a limited portion of the Final Report on Preliminary Review has been released as segregable. As such, no additional portions of the documents are reasonably segregable.

[8]    The Hibbard Declaration only refers to reviewing the reports for segregability—not the FD-302s. The FD-302s are fully protected by attorney work product and therefore do not require segregability review. *Jud. Watch*, 432 F.3d at 371 ("If a document is fully protected as work product, then segregability is not required."). Notably, "[t]he circuit's case law is clear that '[t]he work-product doctrine simply does not distinguish between factual and deliberative material.'" *Id.* (quoting *Martin*, 819 F.2d at 1187). Therefore, the Department properly excluded the FD-302s from its segregability analysis.

product privilege. *See Vaughn* Index at 1-3. "[I]f [documents are] fully protected as work product, then segregability is not required." *Meza v. Dep't of Just.*, 719 F. Supp. 2d 1, 6 (D.D.C. 2010) (quoting *Jud. Watch*, 432 F.3d at 371).

For all these documents, the Department found no information to be segregable, but rather, that the documents were protected in full. *See* Hibbard Decl. ¶ 44. The Department explained that "disclosure of these documents, and the facts selected for and contained within them, would undermine the core legal advice and analysis that the privilege [is] meant to protect by revealing attorneys' assessments of what was deemed significant in the course of investigations into the destruction of the videotapes and interrogations of detainees." *Id.*

The Department determined that two documents, the recommendations for full criminal investigations, are also covered by the deliberative process privilege. *See Vaughn* Index at 1-2. Similarly, for these documents, upon thorough review, the Department found no information to be segregable, but rather, that the documents were protected in full. *See* Hibbard Decl. ¶ 44.

The Department "carefully reviewed each of the documents to determine whether any information could be segregated for release," the Department concluded that no portion of the records were reasonably segregable. *See* Hibbard Decl. ¶ 44. Thus, the documents were withheld in full. The agency's analysis "is entitled to a presumption that it complied with its obligation to disclose reasonably segregable material." *Sussman*, 494 F.3d at 1117. Accordingly, the Department met its duties under FOIA when it thoroughly analyzed each document and found no other portions of the documents to be reasonably segregable.

*        *        *

**CONCLUSION**

Accordingly, for all of the reasons set forth above and in the accompanying declarations, the Department respectfully submits that its motion for summary judgment should be granted.

Dated: October 10, 2023

Respectfully submitted,

MATTHEW M. GRAVES
D.C. Bar No. 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:    */s/ Alex Schreiber*
ALEXANDER SCHREIBER
D.C. Bar #1724820
Special Assistant U.S. Attorney
601 D Street, NW
Washington, D.C. 20530
Phone: (202) 252-6754
Alexander.Schreiber@usdoj.gov