UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHARLIE SAVAGE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF JUSTICE, <br><br> Defendant. | Civil Action No. 22-2477 (JEB) |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

MATTHEW M. GRAVES
D.C. Bar No. 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

ALEXANDER SCHREIBER
Special Assistant U.S. Attorney
601 D Street, NW
Washington, D.C. 20530
Phone: (202) 252-6754
Alexander.Schreiber@usdoj.gov

*Attorneys for the United States of America*

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

I.      The *Res Judicata* Doctrine Bars Plaintiffs' Relitigation Of Claims Previously
        Ruled On By The Southern District Of New York And The Second Circuit. ......... 1

II.     The Department Properly Withheld All Responsive Records Under FOIA
        Exemption 5. ........................................................................................................... 6

        A.      The Department Has Shown Foreseeable Harm In The Release Of The
                Records Withheld Under The Attorney Work-Product Doctrine And The
                Deliberative Process Privilege. .................................................................. 6

        B.      The Department Did Not Waive Any Privilege Under The Public Domain
                Doctrine ................................................................................................... 21

CONCLUSION ............................................................................................................. 29

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*ACLU of Mass. v. ICE*,
   2023 U.S. Dist. LEXIS 138596 (D. Mass. Aug. 9, 2023) .......................................... 12

*Afshar v. Dep't of State*,
   702 F.2d 1125 (D.C.Cir.1983) ...................................................................... 22, 23, 28

*Agrama v. IRS*,
   No. 17-5270, 2019 WL 2064505 (D.C. Cir. Apr. 19, 2019) ....................................... 13

*Allen v. McCurry*,
   449 U.S. 90 (1980) ...................................................................................................... 1, 3

*Assassination Archives & Research Ctr. v. Cent. Intelligence Agency*,
   334 F.3d 55 (D.C. Cir. 2003) .................................................................................. 23, 24

*Bonner v. Fed. Bureau of Investigation*, Civ. A.,
   No. 21-2166 (PAE), 2023 WL 5098503 (S.D.N.Y. Aug. 9, 2023) ............................. 28

*Cable News Network, Inc. v. Fed. Bureau of Investigation*,
   293 F. Supp. 3d 59 ................................................................................... 22, 26, 27

*Center for Investigative Reporting v. United States Customs & Border Prot.*,
   436 F. Supp. 3d 90 (D.D.C. 2019) ........................................................................ 7, 8, 19

*Citizens for Responsibility & Ethics in Washington v. Dep't of Justice*,
   48 F.Supp.3d 40 (D.D.C.2014) .............................................................................. 18, 19

*Coastal States Gas Corp. v. Dep't of Energy*,
   617 F.2d 854 (D.C. Cir. 1980) ...................................................................................... 11

*Cottone v. Reno*,
   193 F.3d 550 (D.C. Cir. 1999) ................................................................. 21, 22, 23, 29

*Cromwell v. City of Sacramento*,
   94 U.S. 351 (1876) .......................................................................................................... 1

*Davis v. Dep't of Just.*,
   968 F.2d 1276 (D.C. Cir. 1992) .................................................................................... 22

*Drake v. FAA*,
   291 F.3d 59 (D.C. Cir. 2002) ......................................................................................... 2

*Ellis v. United States Dep't of Just.*,
   110 F. Supp. 3d 99 (D.D.C. 2015) ................................................................................ 11

*Energy Policy Advocates v. Dep't of Just.*,
   2023 WL 4198200 (D.D.C. June 27, 2023) ................................................................. 20

*F.T.C. v. Grolier Inc.*,
   462 U.S. 19 (1983) ........................................................................................................ 18

*Ferris v. Cuevas*,
   118 F.3d 122 (2d Cir. 1997) ............................................................................................ 4

*Friends of the River v. U.S. Army Corps of Engineers*,
   Civ. A. No. 16-2327 (JMC), 2023 WL 4105168 (D.D.C. June 21, 2023) ............ 9, 11

*Frugone v. CIA,*
  169 F.3d 772 (D.C.Cir. 1999) ................................................................................. 27
*Heggestad v. U.S. Dep't of Just.,*
  182 F. Supp. 2d 1 (D.D.C. 2000) ........................................................................... 10
*I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.,*
  723 F.2d 944 (D.C. Cir. 1983) ................................................................................. 2
*Jud. Watch, Inc. v. U.S. Dep't of,*
  *Def.,* 963 F. Supp. 2d 6 (D.D.C. 2013)............................................................... 22, 24
*Jud. Watch, Inc. v. U.S. Dep't of Health & Hum. Servs.,*
  525 F. Supp. 3d 90 (D.D.C. 2021) ......................................................................... 22
*Jud. Watch, Inc. v. U.S. Dep't of Just.,*
  Civ. A. No. 18-2107 (TSC), 2020 WL 6939763 (D.D.C. Nov. 25, 2020) ................. 16
*Jud. Watch, Inc. v. United States Dep't of Just.,*
  806 F. App'x 5 (D.C. Cir. 2020) ............................................................................. 15
*Judicial Watch, Inc. v. Dep't of Justice,*
  432 F.3d 366 (D.C. Cir. 2005) .......................................................................... 18, 23
*Knight First Amend. Inst. at Columbia Univ. v. Cent. Intel. Agency,*
  424 F. Supp. 3d 36 (D.D.C. 2020) ......................................................................... 27
*Leopold v. United States Dep't of Just.,*
  487 F. Supp. 3d 1 (D.D.C. 2020) .................................................................. 15, 16, 23
*Leopold v. United States Dep't of Just.,*
  Civ. A. No. 19-2796 (JEB), 2021 WL 3128866 (D.D.C. July 23, 2021) ....... 12, 13, 20
*Louise Trauma Ctr. LLC v. United States Dep't of Homeland Sec.,*
  Civ. A. No. 20-01128 (TNM), 2022 WL 1081097 (D.D.C. Apr. 11,2022) ................. 9
*Lykins v. DOJ,*
  725 F.2d 1455 (D.C. Cir. 1984) ............................................................................. 13
*Machado Amadis v. United States Dep't of State,*
  971 F.3d 364 (D.C. Cir. 2020) ............................................................................... 7
*Military Audit Project v. Casey,*
  656 F.2d 724 (D.C.Cir.1981) ................................................................................. 14
*Mobley v. CIA,*
  806 F.3d 568 (D.C. Cir. 2015) ............................................................................... 27
*N.Y. Times Co. v. Dep't of Just.,*
  138 F. Supp. 3d 462 (S.D.N.Y. 2015) .................................................................. 2, 3
*N.Y. Times Co.v. U.S. Dep't of Justice,*
  939 F.3d 479 (2d Cir. 2019)................................................................................ 3, 23
*Niagara Mohawk Power Corp. v. U.S. Dep't of Energy,*
  *169 F.3d 16 (D.C. Cir. 1999)* .............................................................................. 22
*NRDC v. Thomas,*
  838 F.2d 1224 (D.C. Cir. 1988) ............................................................................. 3
*Off. for United States Att'ys,*
  844 F.3d 246 (D.C. Cir. 2016) ............................................................................... 10
*Oglesby v. U.S. Dep't of the Army,*
  79 F.3d 1172 (D.C. Cir. 1996) ............................................................................... 13

*Page v. United States,*
   729 F.2d 818 (D.C. Cir. 1984) ............................................................................ 2

*Public Citizen v. Dep't of State,*
   11 F.3d 198 (D.C. Cir. 1993) ............................................................................ 22

*Remy Enter. Grp., LLC v. Davis,*
   37 F. Supp. 3d 30 (D.D.C. 2014) ...................................................................... 4

*Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation,*
   3 F.4th 350 (D.C. Cir. 2021) ................................................................ 7, 17, 20

*Reps. Comm. for Freedom of the Press. v. United States Customs & Border Prot.,*
   567 F. Supp. 3d 97 (D.D.C. 2021) ................................................................ 9, 11

*Rosenberg v. U.S. Dep't of,*
   *Def.,* 442 F. Supp. 3d 240 (D.D.C. 2020) ................................................ 7, 8, 17, 19

*Salim v. Mitchell,*
   268 F. Supp. 3d 1132 (E.D. Wash. 2017) ........................................................ 28

*SBC Commc'ns, Inc. v. FCC,*
   407 F.3d 1223 (D.C. Cir. 2005) ........................................................................ 1

*Selgjekaj v. Exec. Off. For United States Att'ys,*
   Civ A. No. 20-2145 (CRC), 2021 WL 3472437 (D.D.C. Aug. 6, 2021) .................... 11

*Sierra Club v. U.S. Dep't of Interior,*
   384 F. Supp. 2d 1 (D.D.C. 2004) .................................................................... 17

*Smalls v. United States,*
   471 F.3d 186 (D.C. Cir. 2006) .......................................................................... 2

*Students Against Genocide v. Dep't of State,*
   257 F.3d 828 (D.C. Cir. 2001) .................................................................... 14, 21

*Sunshine Anthracite Coal Co. v. Adkins,*
   310 U.S. 381 (1940) .......................................................................................... 4

*Tax Analysts v. I.R.S.,*
   117 F.3d 607 (D.C. Cir. 1997) .......................................................................... 9

*Taylor v. Sturgell,*
   553 U.S. 880 (2008) ...................................................................................... 4, 5

*U.S. Indus., Inc. v. Blake Constr. Co.,*
   765 F.2d 195 (D.C. Cir. 1985) .......................................................................... 1

*United States v. Nobles,*
   422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) ...................................... 16

*Wilderness Workshop v. United States Dep't of Agric.,* Civ. A.,
   No. 21-2108 (JMC), 2023 WL 5672578 (D.D.C. Sept. 1, 2023) ............................ 9

*Williams & Connolly v. S.E.C.,*
   662 F.3d 1240 (D.C. Cir. 2011) ...................................................................... 17

*Williams v. Perez,*
   No. 15-5228, 2016 WL 520265 (D.C. Cir. Feb. 1, 2016) .................................... 3

*Wolf v. C.I.A.,*
   473 F.3d 370 (D.C. Cir. 2007) .............................................................. 22, 23, 26

*Ying Qing Lu v. Lezell,*
   919 F. Supp. 2d 1 (D.D.C. 2013) ...................................................................... 4

**State Cases**

*Smith v. Jenkins*,
   562 A.2d 610 (D.C. 1989) ............................................................................ 4

**Federal Regulations**

28 C.F.R. § 600 ............................................................................................................ 13

**INTRODUCTION**

As explained in Defendant's opening brief and supporting materials, this case concerns Plaintiffs' yet another attempt to obtain several never before released reports prepared by then First Assistant United States Attorney for the District of Connecticut, John Durham, regarding the Central Intelligence Agency's ("CIA") destruction of video tapes of detainee interrogations abroad.  In short, Plaintiffs argue that certain information in the public domain operates to waive the Department's bases to protect the Durham reports and exhibits from disclosure under Exemption 5 of the Freedom of Information Act ("FOIA").  Plaintiffs' position, however, is unsupported by law of this Circuit.  At base, every document at issue here represents Mr. Durham's work product and is thus shielded by the attorney work-product privilege.  Whether certain facts might coexist in Mr. Durham's reports and in the public domain is not relevant to withholdings under the attorney work-product doctrine.  Indeed, the Second Circuit has already ruled on this issue.  This Court should reject Plaintiffs' transparent attempt to relitigate this settled matter by granting Defendant's Motion for Summary Judgment and by denying Plaintiffs' cross-motion.

**I.    The *Res Judicata* Doctrine Bars Plaintiffs' Relitigation Of Claims Previously Ruled On By The Southern District Of New York And The Second Circuit.**

"Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citing *Cromwell v. City of Sacramento*, 94 U.S. 351, 352 (1876)); *SBC Commc'ns, Inc. v. FCC*, 407 F.3d 1223, 1229 (D.C. Cir. 2005) ("[A] party who once has had a chance to litigate a claim before an appropriate tribunal usually ought not to have another chance to do so.") (emphasis in original) (quoting Restatement (Second) of Judgments § 6 (1982)). Therefore, a party cannot escape the preclusive effect of the doctrine by raising a different legal theory or seeking a different remedy that was available to him in the prior action. *See U.S. Indus.*,

*Inc. v. Blake Constr. Co.*, 765 F.2d 195, 205 (D.C. Cir. 1985) (adopting "the Restatement (Second) of Judgments' pragmatic, transactional approach," which "reflects a trend 'in the direction of requiring that a plaintiff present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence'" (citation omitted) (quoting 1B J. Moore, Moore's Federal Practice ¶ 0.410[1] at 359 (2d ed. 1983)).

A subsequent lawsuit will be precluded if "there has been prior litigation (1) involving the same claims or cause of action (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006). To determine whether the facts of two cases are similar enough to constitute the same "cause of action," courts must consider whether the lawsuits turn on the same "nucleus of facts." *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984)). This involves an assessment of "whether the facts are related in time, space, origin, or motivation, whether they form a conventional trial unit, and whether their treatment as a unit conforms to the parties' expectations." *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 949 n.5 (D.C. Cir. 1983) (quoting 1B J. Moore, Moore's Federal Practice ¶ 0.410[1] (2d ed. 1983)).

As discussed in the Department's opening brief, *res judicata* applies here by virtue of the 2014 litigation before the Southern District of New York and the United States Court of Appeals for the Second Circuit.  Def. Mot. (ECF No. 25-2 at 29); *see, generally*, *N.Y. Times Co. v. Dep't of Just.*, 138 F. Supp. 3d 462 (S.D.N.Y. 2015), *aff'd in part, rev'd in part*, 939 F.3d 479 (2d Cir. 2019).  First, this case and the 2014 case contain the same cause of action.  Each case seeks to challenge the Department's withholding of the Durham reports and FD-302s under FOIA Exemption 5.   Plaintiffs previously challenged whether the attorney work-product privilege

applied to the FD-302s. *See N.Y. Times*, 138 F. Supp. 3d at 475-76.  Indeed, Plaintiffs concede that in May 2014 "[t]he [New York] Times sued over the same documents at issue here[.]"  Pls. Response (ECF No. 29 at 11).  In the 2014 litigation, Plaintiffs did not challenge the applicability of the attorney work-product to the reports at issue here, which the Second Circuit noted was "part[ially] because Durham prepared them in anticipation of possible criminal prosecutions." *N.Y. Times Co. v. U.S. Dep't of Justice*, 939 F.3d 479, 494 (2d Cir. 2019) ("It is not disputed here that Durham's memoranda were attorney work product at the time they were drafted[.]"); *see also N.Y. Times*, 138 F. Supp. 3d at 476  ("The parties agree that all the memoranda sought in this case are covered by the work product doctrine and are therefore within Exemption Five of FOIA.").  That does not alter the analysis that the earlier litigation and this litigation represent the same cause of action.  *See NRDC v. Thomas*, 838 F.2d 1224, 1235 (D.C. Cir. 1988) (holding that *res judicata* "bars re-litigation not only as to all matters which were determined in the previous litigation, but also as to all matters that might have been determined").

Second, Plaintiffs acknowledge that there has been a valid judgment on the merits.  *See* Pls. Response (ECF No. 29 at 11) ("The district court held that the FD-302s fell within the scope of Exemption 5[.]").  The character of the contested records have not changed since the 2014 litigation and, thus, the Southern District's decision applies here to establish that the FD-302s— the same documents that were at issue in that litigation—satisfy the first two prongs of the attorney work-product privilege analysis because they were prepared by or under the supervision of an attorney in anticipation of litigation.  *See Williams v. Perez*, No. 15-5228, 2016 WL 520265, at *1 (D.C. Cir. Feb. 1, 2016) (quoting *Allen*, 449 U.S. at 94) ("Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.")).

Third, it cannot be disputed that the Southern District of New York and the Second Circuit had jurisdiction to render judgment on the merits of Plaintiffs' claims in the earlier action.

Finally, while Plaintiff Scott Shane was not a party to the 2014 litigation, his status as a former writer and employee for the New York Times shows that he was privy to the parties in that litigation. Thus, the *res judicata* doctrine nevertheless applies. A privy is a party "so identified in interest" with a party to the former litigation that he or she represents almost identical legal interests. *Smith v. Jenkins*, 562 A.2d 610, 615 (D.C. 1989). Courts have long held that "parties nominally different may be, in legal effect, the same." *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402 (1940); *see also* 18 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 4449 ("[a]s the preclusive effects of judgments have expanded to include nonparties in more and more situations . . . it has come to be recognized that the privity label simply expresses a conclusion that preclusion is proper"). Thus, "nonparty preclusion may be justified based on a variety of pre-existing 'substantive legal relationship[s]' between the person to be bound and a party to the judgment," as well as when a party was "'adequately represented by someone with the same interests who [wa]s a party' to the suit." *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) (citations omitted); *see Ferris v. Cuevas*, 118 F.3d 122, 127 n.6 (2d Cir. 1997) ("Business partners are generally held to be in privity for purposes of business activities."); *Remy Enter. Grp., LLC v. Davis*, 37 F. Supp. 3d 30, 37–38 (D.D.C. 2014) (finding LLC was in privy with its sole member for purposes of claim preclusion); *Ying Qing Lu v. Lezell*, 919 F. Supp. 2d 1, 4 (D.D.C. 2013) (concluding that the parties were in privity because there was no "meaningful distinction between [plaintiff] the individual and his company").

Here, Plaintiff Shane is a former New York Times reporter who has been added to this litigation in a transparent attempt to avoid the preclusive effect of the prior litigation. Scott Shane,

the New York Times, and Charlie Savage acted in tandem with respect to every significant aspect of the claims in this case. They submitted contemporaneous FOIA requests for the same documents and jointly filed this lawsuit. Moreover, all three Plaintiffs have litigated this matter through legal representation handled by the New York Times. Indeed, their privity status is well illustrated by the fact that they have each filed almost perfectly duplicative lawsuits in this Court, demonstrating that Scott Shane asserts the same claims based on the same legal theories that The New York Times and Charlie Savage asserted in the 2014 litigation. Therefore, that litigation plainly "adequately represented" Scott Shane's interests. *See Taylor*, 553 U.S. at 894. For these reasons, the result of the 2014 litigation bars all three Plaintiffs from attempting to relitigate their 2014 claims.

Plaintiffs argue that "[f]undamental changes to facts and law at issue . . . mean that preclusion is not an obstacle to Plaintiffs' suit." Pls. Response (ECF No. 29 at 39-40). Plaintiffs argue that "extensive declassification of information around the CIA's detention and interrogation program over the last eight years amounts to a waiver of Exemption 5 privileges." *Id.* at 40. As explained in greater detail below, Plaintiffs' assertion of a factual shift due to declassification of additional materials is without merit and does not automatically waive the Department's privileges. Plaintiffs also argue that the FOIA Improvement Act of 2016 represents a change in the law by virtue of the addition of the foreseeable harm standard, and assert that this change in law operates to permit Plaintiffs' to relitigate their claim here. *See Id.* Plaintiffs claim is remarkable as their claim suggests any pre-2016 FOIA matter may be relitigated. As explained below, the foreseeable harm standard in the context of highly sensitive information under the deliberative process privilege, and the attorney work-product privilege, does not impose a significant additional hurdle for the Department to satisfy in order to withhold the records at issue. Thus, the addition of the

foreseeable harm requirement does not represent so significant a change as to permit re-litigation of this cause of action.

## II. The Department Properly Withheld All Responsive Records Under FOIA Exemption 5.

Plaintiffs do not challenge that the records at issue here are otherwise covered by Exemption 5. Pls. Response (ECF No. 29 at 22, n.5). Rather, Plaintiffs first dispute whether the Department established that disclosure of any of the withheld documents would cause foreseeable harm to an interest protected by the attorney work-product doctrine or deliberative process privilege under FOIA Exemption 5. *Id.* at 22. Second, Plaintiffs assert that information in the public domain waives the Department's ability to withhold records in a blanket fashion. *Id.* Contrary to Plaintiffs' claims, the Department comfortably met its burden to show foreseeable harm under Exemption 5, and decidedly has not waived its right to assert those privileges.

### A. The Department Has Shown Foreseeable Harm In The Release Of The Records Withheld Under The Attorney Work-Product Doctrine And The Deliberative Process Privilege.

Plaintiffs generally argue that the Department has not shown foreseeable harm. Plaintiffs begin by accusing the Department of "mov[ing] the goalposts[]" to "create[] a 'lower' burden for attorney work product than withholdings pursuant to the deliberative process privilege." Pls. Response (ECF No. 29 at 25). Plaintiffs' assertion that there is no basis to distinguish between the foreseeable harm requirement in one provision of the FOIA or another is misguided. *Id.* As explained below, it is clearly established in this District that the amount of detail needed to show foreseeable harm may depend on the context or sensitivity of the withheld information, or the privilege that applies. Plaintiffs' attempts to obfuscate these principles are unpersuasive.

The Department's Motion (ECF No. 25-2 at 18-19) explained that Congress added the foreseeable harm requirement via the FOIA Improvement Act of 2016 to limit "agency overuse

and abuse of Exemption 5 and the deliberative process privilege." *Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 369 (D.C. Cir. 2021).   Congress acted "to foreclose the withholding of material unless the agency can articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld." *Id.* (internal citation and quotation omitted).   In doing so, it imposed  "an independent and meaningful burden on agencies." *Id.*  (quoting *Center for Investigative Reporting v. United States Customs & Border Prot.*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019)).

Regarding the deliberative process privilege, "the foreseeability requirement means that agencies must concretely explain how disclosure 'would'—not 'could'—adversely impair internal deliberations."   *Reps. Comm. for Freedom of the Press*, 3 F.4th at 369–70 (quoting *Machado Amadis v. United States Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020)).   Because Congress was most concerned about agency overuse of deliberative process privilege, the foreseeable harm requirement is most stringent under deliberative process privilege.   *See id.* (quoting H.R. REP. NO. 391, 114th Cong., 2d Sess. 9-10 (2016) ("The deliberative process privilege is the most used privilege and the source of the most concern regarding overuse.")).   Even in the context of the deliberative process privilege, the foreseeable harm inquiry is "context specific[.]"   *Id.* (citing *Rosenberg v. U.S. Dep't of Def.,* 442 F. Supp. 3d 240, 259 (D.D.C. 2020)).   Accordingly, the D.C. Circuit has upheld foreseeable harm showings where "the very context and purpose of" the withheld material "make[s] the foreseeability of harm manifest."   *Id.* at 372 (upholding FBI's withholding of emails where "the sensitivity of the context [of email conversations] . . . as well as their subject matter, and the need for confidentiality . . . together provide the particularized context for a finding of foreseeable harm[]").

In *Rosenberg v. U.S. Dep't of Def.*, 442 F. Supp. 3d 240, 259-60 (D.D.C. 2020), this Court discussed in greater detail the principle that "[t]he degree of detail necessary to substantiate a claim of foreseeable harm is context-specific." The *Rosenberg* Court recognized that "[i]n some instances, the withheld information may be so obviously sensitive . . . that a simple statement illustrating why the privilege applies and identifying the harm likely to result from release 'may be enough.'" (quoting *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 107 (D.D.C. 2019). The *Rosenberg* Court observed the different treatment warranted by sensitive information such as "as the disclosure of internal deliberations between a high-ranking military commander and senior government officials about a new detention operation in the United States[,]" which warrants a less detailed showing on foreseeable harm, and "more mundane, quotidian matters . . . [where] more explanation [on foreseeable harm] may be necessary[]" such as recommendations and advice about maintenance issues at a military base. *See Rosenberg*, 442 F. Supp. 3d at 259-60  (discussing *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 107). Applying these principles, the *Rosenberg* Court determined that the Department of Defense satisfied its burden under the foreseeable harm requirement for its withholding of deliberative sensitive information about operations at Guantanamo Bay. *See Rosenberg*, 442 F. Supp. 3d at 261  (remarking that sensitivity of operational issues at Guantanamo Bay allows the Court to readily see how its release would prospectively harm agency decisionmaking").

Just as the amount of detail required to show foreseeable harm may depend on the context or sensitivity of the withheld information, the amount of detail needed also depends on the privilege that applies. Indeed, the "foreseeable harm requirement may be more easily met when invoking *other privileges* and exemptions" than the deliberative process privilege where "the risk of harm through disclosure is more self-evident and the potential for agency overuse is attenuated."

*Reps. Comm. for Freedom of the Press.*, 567 F. Supp. 3d at 120 (emphasis added).  Attorney work-product is one such privilege.

Accordingly, Courts in this District have held that an agency has a lower burden to show foreseeable harm for attorney work-product information and may not need to provide as much detail because the harm that follows from release of work-product materials is self-evident.  *See, e.g., Friends of the River v. U.S. Army Corps of* Engineers, Civ. A. No. 16-2327 (JMC), 2023 WL 4105168, at *5 (D.D.C. June 21, 2023) ("in the case of the attorney . . . work-product privilege[], 'for which the risk of harm through disclosure is more self-evident and the potential for agency overuse is attenuated,' an agency may not need to provide as much information to satisfy the foreseeable harm requirement.") (quoting *Tax Analysts v. I.R.S.*, 117 F.3d 607, 620 (D.C. Cir. 1997)); *Louise Trauma Ctr. LLC v. United States Dep't of Homeland Sec.*, Civ. A. No. 20-01128 (TNM), 2022 WL 1081097, at *6 (D.D.C. Apr. 11, 2022) (holding that, although agency's declaration provides "little clarity" on foreseeable harm, "the 'context and purpose' of attorney work product makes self-evident the harm from its disclosure".).  For these reasons, establishing that the attorney work-product privilege applies "'will go a long way' towards satisfying [Defendant's] burden [under the foreseeable harm standard]."  *Friends of the River,* 2023 WL 4105168, at *5 (quoting *Reps. Comm. for Freedom of the Press v. United States Customs & Border Prot.*, 567 F. Supp. 3d 97, 124 (D.D.C. 2021)); *see also Wilderness Workshop v. United States Dep't of Agric.*, Civ. A. No. 21-2108 (JMC), 2023 WL 5672578, at *9 (D.D.C. Sept. 1, 2023).

    1.  Attorney Work-Product Privilege

Courts in this Circuit recognize that the attorney work-product privilege serves "to protect the integrity of the adversary trial process itself. . . . by provid[ing] a working attorney with a zone of privacy within which to think, plan, weigh facts and evidence, candidly evaluate a client's case,

and prepare legal theories. . . .  [and without it,] much of what is now put down in writing would remain unwritten because [a]n attorney's thoughts, heretofore inviolate, would not be his own." *Nat'l Ass'n of Crim. Def. Laws. v. Dep't of Just. Exec. Off. for United States Att'ys*, 844 F.3d 246, 251 (D.C. Cir. 2016) (internal quotations & citations omitted); *see also Heggestad v. U.S. Dep't of Just.*, 182 F. Supp. 2d 1, 7 (D.D.C. 2000) ("primary purpose of this privilege is to protect against disclosure the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning litigation"); *see also SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1203 (D.C. Cir. 1991) ("[W]here an attorney prepares a document in the course of an active investigation focusing upon specific events and a specific possible violation by a specific party, it has litigation sufficiently 'in mind' for that document to qualify as attorney work product.").

Here, the Department comfortably met its burden to show foreseeable harm under the attorney work-product privilege in release of the withheld Durham reports and FD-302s.  At their core, the withheld reports and FD-302s detail the complex analysis undertaken by Department attorneys to determine whether to bring a criminal prosecution for possible legal violations within the executive branch.  *See* Hibbard Decl. ¶¶ 20, 32 (ECF No. 25-4).  Department attorneys are singularly tasked with enforcing federal laws, including potential legal violations within the Executive Branch itself, and when performing this vital function, Department attorneys necessarily engage in factual investigations, evidence-gathering, and careful, frank analysis of the law and evidence specific to cases under their review.  *Id.* ¶ 37.  This is precisely the investigatory and decisionmaking process that the CIA tapes and interrogation investigations attorneys engaged in during their yearslong investigations.  *Id.* ¶ 37.  Disclosure of this information would hinder the Government's ability to investigate potential legal violations because Department attorneys would no longer feel free to pursue lines of questioning, avenues of investigation, or to memorialize

important thoughts on potential litigation strategies for fear that the information might be disclosed to the detriment of the Government's current and future litigating positions. *Id.* ¶ 37.

In this context, the anticipated harm to interests protected by the privilege from the release of investigative reports and materials like the ones withheld here is self-evident. *See Selgjekaj v. Exec. Off. For United States Att'ys*, Civ A. No. 20-2145 (CRC), 2021 WL 3472437, at *5 (D.D.C. Aug. 6, 2021), *aff'd*, Civ. A. No. 21-5264, 2023 WL 2905019 (D.C. Cir. Apr. 10, 2023) (finding "particularized indicia of foreseeable harm" in release of jacket to case file containing Department attorney's notes because "[i]t is hardly debatable that the government's ability to prosecute such cases would be impeded if its attorneys were deprived of "a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories.") (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 864 (D.C. Cir. 1980)); *Ellis v. United States Dep't of Just.*, 110 F. Supp. 3d 99, 109 (JEB) (D.D.C. 2015), *aff'd*, Civ A. No. 15-5198, 2016 WL 3544816 (D.C. Cir. June 13, 2016) ("These types of [prosecution] documents, in short, are classic attorney work product, the disclosure of which would risk putting [the Department's] lawyers' thought processes and strategy on public display. The records include research and analysis, as well as recommendations about possible courses of action, created in preparation for criminal prosecution."). Accordingly, Mr. Hibbard's description of the harm that would manifest if the reports or FD-302s were released is more than sufficient to meet the Department's burden. *See Friends of the River*, 2023 WL 4105168, at *5 (establishing that the attorney work-product privilege applies "'will go a long way' towards satisfying [Defendant's] burden [under the foreseeable harm standard]") (quoting *Reps. Comm. For Freedom of the Press v. United States Customs & Border Prot.*, 567 F. Supp. 3d 97, 124 (D.D.C. 2021)).

Plaintiffs attempt to undermine the Department's well supported bases for foreseeable harm by characterizing the Department's representations as "boilerplate[,] generalized[, and] untethered to the contents of the Durham Reports." Pls. Response (ECF No. 29 at 27). Plaintiffs support this argument by pointing out the unremarkable fact that two government declarants, in two different cases, each discussing the same legal issue, describe the harms inherent to releasing attorney work-product, in similar, though not identical, terms. *See Id.* at 28, n.8. This Court has rejected similar reasoning, remarking that "such a position asks this Court to treat Defendant's foreseeable-harm arguments as matchsticks that find themselves useless after a short time aflame. . . . plac[ing] an untenable burden on Defendant." *Leopold v. United States Dep't of Just.*, Civ. A. No. 19-2796 (JEB), 2021 WL 3128866, at *4 (D.D.C. July 23, 2021) ("mere recitation of similar reasoning in showing harm does not by itself render that reasoning 'boilerplate.'"). Indeed, Plaintiffs cite to cases like *ACLU of Mass. v. ICE*, 2023 U.S. Dist. LEXIS 138596 (D. Mass. Aug. 9, 2023), to show that there the agency "only put forward generic, blanket statements" of harm to work-product privilege interests, some of which the Court rejected, but ignores that even in that case where the agency's showing was much less detailed than the Department's here, the Court upheld many of the agency's repeated rationales for protecting attorney work-product materials such as "practice pointers." *Id.* at *12 ("Defendant has met its burden of showing that . . . disclosure would harm the integrity of the adversarial process [for entries 4, 10, 12, 13, 14, 15, 16, 20, 21, 25, 26, 27, 29, 30, 32].").

Here, Mr. Hibbard clearly prepared his detailed and thorough declaration in response to litigation arising out of this matter. Moreover, Mr. Hibbard's declaration is anything but boilerplate, generalized, or untethered to the contents of the withheld materials. This is evidenced by Mr. Hibbard's detailed description of the withheld materials, their context, the reasons

supporting the Department's withholdings, and even the previous litigation over these same records in the Second Circuit.  *See, generally*, Hibbard Decl. (ECF No. 25-4); *See also Leopold*, 2021 WL 3128866, at *4 ("If Defendant can specifically and successfully argue why a given reason applies to one category, the Court will not require a completely different rationale for others.").  It is well established that a declarant does not need to provide so much detail about withheld documents as to undermine the privilege being asserted.  *See Agrama v. IRS*, No. 17-5270, 2019 WL 2064505, at *2 (D.C. Cir. Apr. 19, 2019) (holding that district court acted within its discretion in finding good cause for permitting *ex parte* submissions because "requiring the IRS to produce further 'public justification would threaten to reveal the very information for which a FOIA exemption is claimed'" (quoting *Lykins v. DOJ*, 725 F.2d 1455, 1463 (D.C. Cir. 1984))); *see also Oglesby v. U.S. Dep't of the Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996) ("The description and explanation the agency offers should reveal as much detail as possible as to the nature of the document without actually disclosing information that deserves protection.").  In short, Plaintiffs attempt to hold the Department to a higher standard than FOIA jurisprudence requires.

Plaintiffs next appear to argue that the Department's disclosures of certain other special counsel reports, FD-302s, and the like, in unrelated matters, undermine the Department's articulated bases for foreseeable harm. Pls. Response (ECF No. 29 at 28-30).  Plaintiffs attach as an exhibit to its cross-motion a copy of a publicly released special counsel's report and asserts "special counsel reports are often released to the public with limited redactions." *Id.* at 28.  From this Plaintiffs conclude that "the disclosure of the Durham Reports can cause no marginal foreseeable harm to the interests protected by Exemption 5." *Id.* at 29.

First, Plaintiffs conflate the general term "special prosecutors and counsels[,]" as used in the Hibbard Decl. ¶ 37, with the term of art "special counsel" as used in the 28 C.F.R. § 600, *et*

*seq* ("General Powers of Special Counsel"). The group of attorneys appointed as special counsel under the latter provision is extremely limited—there have been few in our Nation's history. Thus, while it is true that the Department has published special counsel reports in the sense Plaintiffs intend, those types of reports are not implicated here. The investigating attorneys here were among the far more common pool of career Department attorneys appointed to specially investigate and, if necessary, prosecute a sensitive matter. As such, the implication of Plaintiffs' position is far more sweeping than they admit.

Second, even if Plaintiffs' argument were taken at face value, the release of a specific type of document does not undermine the potential foreseeable harm of a document of a related type on a different topic. *See, e.g.*, *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 835-36 (D.C. Cir. 2001) (rejecting plaintiff's argument "that by releasing some photographs . . . the government waived its right to withhold any others.").

Third, since the attorney work-product privilege is explicitly discretionary, a finding that the release of a type of document harms withholding of any other documents of a similar type in the future would perversely incentivize government agencies to withhold more, not less material. *See Military Audit Project v. Casey*, 656 F.2d 724, 753–54 (D.C.Cir.1981) (noting that penalizing an agency for voluntarily declassifying documents would "work mischief" by creating an incentive against disclosure).

Fourth, Plaintiffs' arguments regarding the Department's withholding of FD-302s are unpersuasive. Plaintiffs assert that "FD-302s often contain material that is innocuous" and then appear to observe that the Department sometimes releases FD-302s. Pls. Response (ECF No. 29 at 31). It is true that some FD-302s may be appropriate for greater disclosure than others. Whether to release an FD-302 is context specific and is considered on a case-by-case basis. For example,

when interviews are "conducted at the direction of the career [Department] prosecutors assigned, and prosecutors participated in determining the investigative strategy for each interview and in questioning the witnesses . . . . and reviewed the FD-302s at issue[,]" *Jud. Watch, Inc. v. United States Dep't of Just.*, 806 F. App'x 5, 7 (D.C. Cir. 2020) (internal quotation omitted), then those FD-302s may be protectable as attorney work-product and may be withheld.  Here, the interviews memorialized in the withheld FD-302s were "done under [Mr. Durham's] supervision and at [his] direction" (Durham Decl. ¶¶ 12, 20 (ECF No. 25-4 Ex. B)), Department attorneys participated in selection of the witnesses and the interview process (*Id.*), and were "reviewed" by Department attorneys (*Id.*), as part of the Department's "evaluation of whether criminal prosecutions were warranted."  Durham Decl. ¶¶ 12, 20 (ECF No. 25-4 Ex. B).  This places the FD-302s at issue here within the ambit of classic attorney work-product materials.

Contrary to Plaintiffs' claim (Pls. Response (ECF No. 29 at 17-18)), the Department's practice concerning release of FD-302s did not undergo a recent change.  Although Plaintiffs would have this Court believe that the cases it discusses evidence a change in Department policy regarding FD-302s, those cases only underscore the Department's consistent, context- and document-specific application of the FOIA.

Plaintiffs observe that in *Leopold v. United States Dep't of Just.*, 487 F. Supp. 3d 1, 15 (D.D.C. 2020), the Department released FD-302s, many of which Plaintiffs allege contained details never before released to the public.  At base, in *Leopold*, the Department released portions of FD-302s that matched the information released in the Mueller report, when a given FD-302 was the source of the information contained in the report.  Specifically, the Department clearly explained that "[i]f the information in a given FD-302 was as specific as that information released in the Mueller Report, . . . that information was released in the FD-302s produced to [the]

[p]laintiffs . . ." but that "[i]f the information released in the Mueller Report did not match the information in a given FD-302, then [it was] determined that the Department had not waived its ability to withhold the information pursuant to FOIA Exemption 5." *Leopold*, 487 F. Supp. 3d at 13.  Indeed, in *Leopold*, as here, the Department properly withheld FD-302s when they were attorney work-product and were not duplicated in the public domain, or where "releasing a portion of a given FD-302 would provide the public with new information that was not revealed in the redacted Mueller Report[.]" *Id.* at 13-14.

Plaintiffs next note that in *Jud. Watch, Inc. v. U.S. Dep't of Just.*, Civ. A. No. 18-2107 (TSC), 2020 WL 6939763, at *2 (D.D.C. Nov. 25, 2020), the Department "made no redactions to the records on Exemption 5 grounds."  Pls. Response (ECF No. 29 at 19).  In that case, the Department merely determined that Exemption 5 withholdings were inappropriate in the context of that case, and instead other FOIA exemptions were applied and upheld.  *Id.* at 19. Neither *Leopold* nor *Judicial Watch*, nor the other cases cited by Plaintiffs even hint at any shift in Department policy concerning FD-302 reports.

Plaintiffs also claim that "FBI agents cannot have a reasonable expectation that FD-302s will be kept confidential, given [the Department's] practice of disclosing them in criminal trials or in response to FOIA requests."  Pls. Response (ECF No. 29 at 32).  That argument is simply misguided.  *Leopold*, 487 F. Supp. 3d at 13–14  ("attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial[,]"and "[i]t is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself") (quoting *United States v. Nobles*, 422 U.S. 225, 238–39, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975)); *see also id.* ("[t]he decision of the [ ] Department to disclose the . . . [FD-302s] in [a] criminal proceeding has no bearing on whether [the] FOIA permits

the [Department] to withhold [such information]") (quoting *Williams & Connolly v. S.E.C.*, 662 F.3d 1240, 1244 (D.C. Cir. 2011)).   The Department sometimes discloses the information contained in FD-302s in full or in part, and other times, as here, withholds information in full. Department attorneys can and do expect that information subject to the attorney work-product privilege will not later be released.  *See, e.g.*, Durham Decl. ¶¶ 11, 19 (ECF No. 25-4 Ex. B) (stating he "expected that these reports would remain confidential").

Fifth, Plaintiffs cite no authority to support the argument that Department attorneys have a diminished expectation of confidentiality in work-product where "the subject of the investigation is high-profile and sensitive."  Pls. Response (ECF No. 29 at 29).  As discussed above, contrary to Plaintiffs' assertion, the backdrop and context of the records at issue which involve a national controversy and high-profile investigation only bolsters or serves to make the foreseeable harm in disclosure plainly manifest.  *Reps. Comm. for Freedom of the Press*, 3 F.4th at 372 (finding that "[t]he very context and purpose of . . . communications bearing on sensitive undercover operations in the midst of a policy crisis make the foreseeability of harm manifest"); *Rosenberg*, 442 F. Supp. 3d at 259-60.  Moreover, to the extent Plaintiffs suggests that there is a balancing test to determine when to disclose privileged information protected from disclosure under Exemption 5, that argument fails.  *See Sierra Club v. U.S. Dep't of Interior*, 384 F. Supp. 2d 1, 29 (D.D.C. 2004) ("once a government agency makes a prima facie showing of privilege, the analysis under FOIA Exemption 5 ceases, and does not proceed to the balancing of interests.").  The Court should reject Plaintiffs' invitation to adopt such a rule.

Plaintiffs also incorrectly argue that "the documents [at issue] are not inherently and inevitably sensitive" because "[t]he investigations at issue have been closed for more than 11 years" and "the FD-302s have no connection to similar or recurring litigation"  Pls. Response (ECF

No. 29 at 32).  This, however, is of no moment.  As Plaintiffs indeed acknowledge elsewhere (*id.* at 25), the attorney work-product privilege has no temporal limitation.  *F.T.C. v. Grolier Inc.*, 462 U.S. 19, 26–27 (1983) (ruling that termination of litigation does not vitiate the protection for material otherwise properly categorized as attorney work-product).

Lastly, to the extent Plaintiffs suggest that the Department must segregate factual material contained in records protected from disclosure under the attorney work-product privilege (*id.* 27), Plaintiffs are mistaken.  The law in this District is clear, "[i]f a document is fully protected as work product, then segregability is not required."  *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 371 (D.C. Cir. 2005); *Citizens for Responsibility & Ethics in Washington v. Dep't of Justice*, 48 F.Supp.3d 40, 51 (D.D.C.2014) (segregability analysis was not required for documents protected by work-product exemption). Thus, the Court need not examine segregability of factual material here.

### 2. Deliberative Process Privilege

The Department also demonstrated foreseeable harm in the release of the withheld records under the deliberative process privilege.  As explained in Defendant's Motion, documents 5 and 7 of the *Vaughn* Index, and attached exhibits are additionally protected by the deliberative process privilege.  Def. Mot. (ECF No. 25-2 at 13-22).  The Department articulated the foreseeable harm in disclosure of the recommendations for full investigation by explaining that disclosure "would undermine the ability of Department of Justice officials to freely provide candid and forthright evaluations of the matters before the Attorney General and to the internal development of final agency actions, particularly as they relate to high profile, sensitive investigatory matters[.]" Hibbard Decl. ¶ 30 (ECF No. 25-4).  The Department further explained that "[i]f memoranda such as these [were to be] routinely released to the public, Department employees [would] be much

more circumspect in their discussions with each other and in providing all pertinent information and viewpoints to senior officials in a thorough and timely manner." *Id*. If "[s]uch a lack of candor" permeates the Department, its core duties would be seriously impaired by its inability "to foster the forthright, internal discussions necessary for efficient and proper Executive Branch decisionmaking." *Id.* That harm is significant.

The Department's representations about the harm that would follow from release of the deliberative reports and FD-302s suffices to meet the Department's burden given the obvious sensitive nature of the withheld materials. *See Rosenberg*, 442 F. Supp. 3d 259-60 ("[i]n some instances, the withheld information may be so obviously sensitive . . . that a simple statement illustrating why the privilege applies and identifying the harm likely to result from release 'may be enough.'") (quoting *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 107). As discussed above, Courts in this District have emphasized that the sensitive nature of withheld information such as "as the disclosure of internal deliberations between a high-ranking military commander and senior government officials about a new detention operation in the United States[,]" implicates a less onerous or detailed showing on foreseeable harm. *Id*. The withheld materials here resemble those that District Courts have understood to implicate sensitive information. Indeed, Mr. Hibbard describes the withheld materials as "sensitive investigatory matters" and contextualizes them as "embody[ing] Mr. Durham's recommendation to Department leadership that two cases arising out of the CIA interrogations investigation receive full criminal investigations" and the "deliberations and recommendations of the Department attorneys handling the prior investigation." Hibbard Decl. ¶ 30. This is enough to make the harm that would result from release of the withheld materials self-evident.

Plaintiffs largely launch the same attacks regarding foreseeable harm in the context of deliberative process as they levied in the context of attorney work-product. Pls. Response (ECF No. 29 at 27-32). For the same reasons stated above, Plaintiffs' arguments lack merit in the separate context of deliberative process. For instance, Plaintiffs' argument that the Department's claims are generic, or boilerplate again rely on their weak observation that they located a similar case on a similar issue where an agency declarant used similar language to support an agency's position. *Id.* at 23-24, 27-28, 30-31. The foreseeable harm requirement does not test for unique sentence structure or phrasing, rather it tests for context specific explanations. *See Energy Policy Advocates v. Dep't of Just.*, 2023 WL 4198200 at *2, Civ. A. No. 19-03307 (TNM) (D.D.C. June 27, 2023) ("even without enough explanation from the agency, the 'context and purpose' of withheld information can support a finding of foreseeable harm.") (quoting *Reps. Comm. for Freedom of the Press,* 3 F.4th at 372); *Leopold*, 2021 WL 3128866, at *4 ("mere recitation of similar reasoning in showing harm does not by itself render that reasoning 'boilerplate.'"). The Department has provided all that the FOIA requires.

Moreover, Plaintiffs are too quick to dismiss the chilling effect that releasing these materials would have on Department personnel performing the essential functions of deliberative governance. Plaintiffs consider it of no moment "whether or not Mr. Durham expected the Durham Reports to become public" because they appear to believe that Special Counsels should expect their papers to be made entirely public. That concept is misguided. As stated previously, Mr. Durham was a career Department attorney, working with Assistant United States Attorneys, investigating issues of national importance, when the withheld materials were prepared. Mr. Durham explicitly states in his declaration that he "expected that these reports would remain confidential[.]" Durham Decl. ¶¶ 11, 19 (ECF No. 25-4 Ex. B). Notwithstanding that Plaintiffs'

argument is specious given that Mr. Durham was not a Special Counsel at the time of these investigations, release of materials like the ones withheld here, implicate the day-to-day activities and expectations of Department attorneys like Mr. Durham, and his team, without whom such a colossal investigatory effort would have been severely hindered.

Lastly, to the extent Plaintiffs allege that the Department has not met its obligation to segregate non-exempt factual materials (Pls. Response (ECF No. 29 at 27)), that claim is without merit. The Department stands by its arguments in its Motion for Summary Judgment regarding segregability (Def. Mot. (ECF No. 25-2 at 37-38)). The Department met its duties under FOIA when it thoroughly analyzed each document and found no other portions of the documents to be reasonably segregable.

B.  The Department Did Not Waive Any Privilege Under The Public Domain Doctrine.

Plaintiffs next argue that the Department may not assert Exemption 5 privileges to protect the withheld materials because the Durham Reports are in the public domain. Pls. Response (ECF No. 29 at 32). The public domain doctrine, however, does not undermine the Department's Exemption 5 withholdings. Although Plaintiffs go through great lengths to inundate this Court with over 2,300 pages of attachments (Pls. Response (ECF No. 30, Ex. A-OO)), Plaintiffs' claim that the Durham Reports and attachments are in the public domain is unsupported on this record. Accordingly, Plaintiffs cannot meet their burden.

Under the public domain doctrine, it is well established that "materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999). The D.C. Circuit has held that "[f]or the public domain doctrine to apply, the specific information sought must have already been 'disclosed and preserved in a permanent public record.'" *Students Against*

*Genocide*, 257 F.3d at 836 (quoting *Cottone*, 193 F.3d at 554).  A party asserting the doctrine must identify "specific information in the public domain that duplicates that being withheld." *Public Citizen v. Dep't of State*, 11 F.3d 198, 201 (D.C. Cir. 1993) (citing *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C.Cir.1983)).  Courts in this District have remarked that the burden of production is allocated to records requestors because "were it otherwise, the government would face the daunting task of proving a negative: that requested information had not been previously disclosed." *Cottone*, 193 F.3d at 554; *accord Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16, 19 (D.C. Cir. 1999); *Davis v. Dep't of Just.*, 968 F.2d 1276, 1279 (D.C. Cir. 1992) (discussing the plaintiff's obligation to show "that the information he seeks has entered and remains in the public domain").

Although "the D.C. Circuit has not 'establish[ed] a uniform, inflexible rule requiring every public-domain claim to be substantiated with a hard copy simulacrum of the sought-after material,'" *Jud. Watch, Inc. v. U.S. Dep't of Def.*, 963 F. Supp. 2d 6, 13 (D.D.C. 2013) (quoting *Cottone*, 193 F.3d at 555)), a records requestor must still demonstrate with specificity that the sought after "information is in the public domain," *Jud. Watch, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 525 F. Supp. 3d 90, 103 (D.D.C. 2021), and on this, "[t]he D.C. Circuit has 'insist[ed] on exactitude' as to these requirements[.]" *Cable News Network, Inc. v. Fed. Bureau of Investigation*, 293 F. Supp. 3d 59, 73 (JEB) (D.D.C. 2018) (quoting *Wolf v. C.I.A.*, 473 F.3d 370, 378 (D.C. Cir. 2007)).  "'Prior disclosure of similar information does not suffice; instead, the specific information sought by the plaintiff must already be in the public domain by official disclosure.'" *Cable News Network*, 293 F. Supp. 3d at 73 (quoting *Wolf*, 473 F.3d at 378).

As an initial matter, Plaintiffs' arguments asserting that the public domain doctrine waives the Department's attorney work-product privilege are especially dubious.  Under the public

domain doctrine, "the inquiry turns on the match between the information requested and the content of the prior disclosure." *See Wolf*, 473 F.3d at 37.  Plaintiffs must point to "specific information in the public domain that appears to duplicate that being withheld," *Afshar*, 702 F.2d at 1130, "mirror precisely the information that [they have] requested," *Cottone v. Reno*, 193 F.3d 550, 555 (D.C. Cir. 1999), or "precisely track the records sought to be released," *Assassination Archives & Research Ctr. v. Cent. Intelligence Agency*, 334 F.3d 55, 60 (D.C. Cir. 2003).  Thus, in the context of attorney work-product, Plaintiffs must do more than point to general facts that it speculates may merely co-exist in the public domain and in factual portions of an attorney's work-product.  *See Leopold*, 487 F. Supp. 3d at 13 (rejecting assertion of waiver where plaintiffs provided "a non-exhaustive list of some of the key, substantive information [that] the [Department allegedly] improperly redacted from the[ ] [FD-302s]" that merely "presuppose[d] that the FD-302s" duplicated work-product).  The attorney work-product privilege encompasses factual and even public information in the context of an attorney's work-product.  *See Jud. Watch.*, 432 F.3d at 371 ("[F]actual material is itself privileged when it appears within documents that are attorney work-product.").  Accordingly, Plaintiffs must show that those coextensive facts exist in the public domain *in the context of the attorney's work-product*, which definitionally is a mix of fact and analysis.  Public domain waiver can arise only if Plaintiffs cite to official disclosures that reveal information in that specific context.  *See N.Y. Times Co*., 939 F.3d at 496 (finding limited waiver of attorney work product privilege only where official statements disclosed prosecutor's conclusion within privileged documents).  The materials Plaintiffs cite here do not serve that purpose.

First, Plaintiffs attempt to support its public domain argument primarily by pointing to the Senate Select Committee On Intelligence Study Of The Central Intelligence Agency's Detention

And Interrogation Program.  Pls. Response (ECF No. 29 at 34-38).  Plaintiffs include the entire 712-page report, but its references to the information contained therein are couched in the most general terms.  *See, generally*, ECF No. 30-5.  For example, Plaintiffs merely asserts that the respective inquiries undertaken by the Select Committee and Mr. Durham had a "near-identical scope." Pls. Response (ECF No. 29 at 34).  Plaintiffs then speculate that  Mr. Durham had access to the "same information" (*id* 35) the Select Committee reviewed in its effort to "deeply investigate[]" (*id* at 36) similar subject matter.  From this, Plaintiffs urge this Court to accept the remarkable proposition that when the Executive Branch and the Legislative branch launch contemporaneous investigations concerning similar subject matter, the Legislature's release of its findings "create[s] not merely the possibility, but [the] compelling likelihood[] that the 'specific' information" in the Executive's papers "match[es] the information previously disclosed" by the Legislature.  *Id.* at 36.

While Plaintiffs point to a specific tangible document, it does not specifically demonstrate a close fit or match between the contents of the Select Committee Report and the withheld materials.  Plaintiffs acknowledge that "it is impossible to know precisely how much of the information is in the public domain."  Pls. Response (ECF No. 29 at 32).  This is because Plaintiffs do not know what information is contained in the Durham reports.  As one Court has observed, "the public domain doctrine is a doctrine of futility, triggered only when it would serve no purpose to enforce an exemption, it is of almost no use to a plaintiff attempting to learn something that it does not already know."  *Jud. Watch, Inc.*, 963 F. Supp. 2d at 12 (citing *Assassination Archives & Research Ctr.*, 334 F.3d at  60 n. 6 ("[A]s a practical matter," successfully invoking the doctrine "yields the FOIA plaintiff little new information.")).  Here, Plaintiffs clearly do not know what the Durham Reports do or do not contain, and that is because no parts of these withheld materials have

been made public. *See* Durham Decl. ¶¶ 11, 19 (ECF No. 25-4 Ex. B) (noting he "did not disseminate [his reports] to any person or entity other than the offices of the Attorney General and the Deputy Attorney General"). As such, Plaintiffs cannot point to any specific passage of the Select Committee report and credibly represent that the information contained therein is duplicated in the withheld materials.

Indeed, the Senate Select Committees' Report underscores that Plaintiffs have no bases to conclude that its substance is identical to information in the Department's withheld investigative materials. The Select Committees Report's foreword reads in part: "The 2008 review was complicated by the existence of a Department of Justice investigation opened by Attorney General Michael Mukasey, into the destruction of the videotapes and expanded by Attorney General Holder in August 2009. In particular, CIA employees and contractors who would otherwise have been interviewed by the Committee staff were under potential legal jeopardy, and therefore the CIA would not compel its workforce to appear before the Committee. This constraint lasted until the Committee's research and documentary review were completed and the Committee Study had largely been finalized." ECF No. 30-5 at 9. This strongly suggests that the Department's investigation and the Select Committees' investigation were not cooperative, coordinated, or limited to identical source material. The Committee itself describes these two investigations as "separate." *Id.* at n.3. ("From January 2, 2008, to August 30, 2012, the Department of Justice conducted a separate investigation into various aspects of the CIA's Detention and Interrogation Program, with the possibility of criminal prosecutions of CIA personnel and contractors."). Moreover, the report, through the minority, acknowledges that the Select Committee Report was limited in its access to "relevant witnesses [who] were largely unavailable due to the Attorney General's decision to re-open a preliminary criminal review in connection with the interrogation

of specific detainees at overseas locations."  *Id.* at 558 (lamenting that the "Committee had a window of opportunity to invite these relevant witnesses in for interviews" after the Department closed its investigation, but "decided against that course of action."); *see also Id.* at 554 ("the minority correctly predicted that the criminal investigation would frustrate the Committee's efforts to conduct a thorough and effective review").  Notably, the publication date of the Senate Select Committee Report (Dec. 9, 2014) is only one day prior to the date (Dec. 8, 2014) when Mr. Durham declared his reports were not "disseminate[d] . . . to any person or entity other than the offices of the Attorney General and the Deputy Attorney General."  Durham Decl. ¶¶ 11, 19 (ECF No. 25-4 Ex. B).  These observations wholly undermine Plaintiffs' argument.

Plaintiffs make the same general argument about the CIA's Inspector General Report, which Plaintiffs baselessly claim Mr. Durham used to "guide the scope of [the Department's] investigations[.]"  Pls. Response (ECF No. 29 at 39).  Plaintiffs conclude that Mr. Durham's "use" of the Inspector General reports "makes it hard to believe that information subsequently included in the Durham Reports was not drawn from these sources."  *Id.* at 39.  This, however, does not come close to meeting Plaintiffs' burden.  *Cable News Network*, 293 F. Supp. 3d at 73 (("'[p]rior disclosure of similar information does not suffice; instead, the specific information sought by the plaintiff must already be in the public domain by official disclosure.'") (quoting *Wolf*, 473 F.3d at 378)).  Even assuming *arguendo* that this Court accepts that Plaintiffs are an authority for which materials Mr. Durham reviewed during the course of his multi-year investigation, and that those materials reviewed are in the public domain, Plaintiffs' conclusion that the report contains information that "appears to duplicate" "information in the declassified portions" of the Inspector General Reports, still does not follow.  Pl. Response (ECF No. 29 at 39).  Thus, the Inspector General Reports do not support Plaintiffs' public domain argument.

Plaintiffs next ask this Court to ignore the general rule that "[d]isclosure by one federal agency does not waive another agency's right to assert a FOIA exemption[,]" (Pl. Response (ECF No. 29 at 37)) because "that rule is not implicated in a case like this one, where there executive branch both was informed that the disclosures would be made and sanctioned them" (*id*. at 38). Plaintiffs, however, cite no authority to support its proposed departure from "the D.C. Circuit's unequivocal statements that each agency speaks for itself on FOIA disclosure." *Knight First Amend. Inst. at Columbia Univ. v. Cent. Intel. Agency*, 424 F. Supp. 3d 36, 44 (D.D.C. 2020), *aff'd*, 11 F.4th 810 (D.C. Cir. 2021) (citing Frugone v. CIA, 169 F.3d 772, 774-775 (D.C. Cir. 1999) and *Mobley v. CIA*, 806 F.3d 568, 583 (D.C. Cir. 2015)). Neither the CIA nor the Senate are involved in this lawsuit with the Department. Nor do Plaintiffs aver that the Department participated in the process by which these reports were reviewed and declassified during pre-publication review. Accordingly, Plaintiffs' reasons to depart from this Circuit's well-established rules are curious.

Similarly, Plaintiffs' contention that Dr. James Mitchell's 2020 or 2022 military commission testimony (Pls Statement of Facts (ECF No. 29-1 ¶¶ 36-37)) or 2016 memoir (*id.* ¶ 38) could operate to waive the Department's privilege is inapposite with law of this Circuit. Pl. Response (ECF No. 29 at 13-14, 34). "To be 'official,' the release must have been by 'the agency from which the information is being sought.'" *Cable News Network*, 293 F. Supp. 3d at 73 (quoting *Frugone*, 169 F.3d at 774). "Statements made by former government officials, even high-level ones, do not constitute official acknowledgment." *Id.* (holding former Director of the Federal Bureau of Investigation lacked authority to make official disclosures on agency's behalf via Congressional testimony). Here, it is indisputable that "from 2001 to 2005 [Dr. James Mitchell] worked as an independent contractor for the CIA, and from 2005 to 2009 worked at Mitchell,

Jessen & Associates in Spokane, Washington, and continued to work under contract with the CIA."
*Salim v. Mitchell*, 268 F. Supp. 3d 1132, 1138 (E.D. Wash. 2017) (cleaned up); *see also* ECF No.
30-16 at 2 (describing Dr. Mitchell as a contractor); ECF No. 30-17 at P156, L16-21 (Dr. Mitchell
characterizing himself as a contractor).  Dr. Mitchell's contracting relationship with the CIA,
according to Plaintiffs' filings, terminated in 2009.  *See id.* ("The CIA contacted us and said they
were going to renew the contract for 2009. . . . then we got another call . . . they were going to
cancel the contract.").  Even if the CIA were a defendant here, Dr. Mitchell, as a former contractor,
lacked any authority to waive that agency's privilege in 2016, 2020, or 2022—let alone the
privilege of a separate executive branch agency like the Department.  Any contention to the
contrary by Plaintiffs is without merit.

Lastly, to the extent that Plaintiffs argue that a former official's memoir operates to waive
the Department's privilege to withhold records here, Plaintiffs are mistaken. Pls. Response (ECF
No. 29 at 34) ("public disclosures about the CIA's use of torture in Mr. Soufan's memoir . . . with
the approval of the executive branch . . . underscores the need for [the Department] to re-process
the Durham Reports").  In *Afshar v. Department of State*, 702 F.2d 1125, 1133–34 (D.C. Cir.
1983), the D.C. Circuit did not consider books by former CIA officials to be "official executive
acknowledgments," despite passing the CIA's prepublication review.  *Cf. Bonner v. Fed. Bureau
of Investigation*, Civ. A. No. 21-2166 (PAE), 2023 WL 5098503, at *9 (S.D.N.Y. Aug. 9, 2023)
("an agency's prepublication review, and publication approval, of a former employee's book does
not constitute official disclosure by that agency").

In summary, Plaintiffs' assertion that the records withheld by the Department appear in the
public domain is wholly undermined by Plaintiffs' inability to point to any specific information
that represents a match between publicly available information and the Department's reports.

Plaintiffs have not met their burden of production, and as such the Department has no obligation to go through great lengths to prove the negative. *Cottone*, 193 F.3d at 554. Although Plaintiffs have invested substantial efforts into making this case appear complicated by dumping documents in its filings, this case represents a straightforward analysis under this Court's public domain precedents.

## CONCLUSION

Accordingly, for all of the reasons set forth above and in Defendant's Motion for Summary Judgment, the Department respectfully submits that it is entitled to judgment as a matter of law.

Dated: January 9, 2024

<div style="margin-left: 40%;">

Respectfully submitted,

MATTHEW M. GRAVES
D.C. Bar No. 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:    */s/ Alex Schreiber*
ALEXANDER SCHREIBER
D.C. Bar #1724820
Special Assistant U.S. Attorney
601 D Street, NW
Washington, D.C. 20530
Phone: (202) 252-6754
Alexander.Schreiber@usdoj.gov

</div>